108 Cal.Rptr.2d 776 (2001)
90 Cal.App.4th 335
CHATEAU CHAMBERAY HOMEOWNERS ASSOCIATION, Plaintiff and Appellant,
v.
ASSOCIATED INTERNATIONAL INSURANCE COMPANY, Defendant and Respondent.
No. B137320.
Court of Appeal, Second District, Division Three.
June 29, 2001.
*778 Girardi and Keese, Anne M. Huarte, Hermosa Beach, and John A. Girardi, Los Angeles, for Plaintiff and Appellant.
Cummins & White, Annabelle M. Harris, Newport Beach, and Daniel G. Bath, Los Angeles, for Defendant and Respondent.
*777 CROSKEY, J.
This appeal tests the validity of an order of the trial court summarily adjudicating, in favor of the insurer, the claim that the insurer was liable for its bad faith adjustment of the insured's claim of loss. Following the Northridge earthquake on January 17, 1994, the appellant, Chateau Chamberay Homeowners Association (HOA), submitted a claim of loss to its insurer, the respondent, Associated International Insurance Company (AIIC). When it was finally calculated, HOA's claim totaled $5,771,522.
During the investigation process, AIIC paid to HOA several interim payments, which together represented the total amount AIIC believed was due; that amount totaled $1,949,161. A subsequent stipulated arbitration determined that AIIC had underpaid the total amount of HOA's covered loss and ordered that AIIC pay an additional $610,753, plus interest; thus, HOA's total covered loss was determined to be $2,559,914, or approximately 45% of its claimed total loss.
While the amount of HOA's covered loss was resolved by arbitration, its claim for bad faith conduct on the part of AIIC went forward in the trial court. Concluding from the evidence presented that AIIC and HOA had a "genuine dispute" as to what was covered under AIIC's policy and the proper amount of HOA's loss, the trial court determined that AIIC could not be found liable in bad faith for its adjustment activities and the resulting delayed payment of HOA's claim. Based on that determination, it granted AIIC's motion for the summary adjudication of HOA's cause of action for bad faith. As all other issues have now been resolved and a final judgment entered, that ruling may now be reviewed.
The record before us reflects that AIIC and HOA did have a genuine dispute as to (1) just what portion of HOA's claimed loss was actually covered under the policy and (2) the proper amount of HOA's covered loss. In addition, we can find no factual support for the conclusion that AIIC acted unreasonably or without proper cause in its adjustment of HOA's claim. We thus are able to determine, as a matter of law, that AIIC cannot be found liable in bad faith. As a result, we conclude that the trial court did not err in summarily adjudicating *779 HOA's bad faith claim. We therefore will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]
Prior to January 17, 1994, AIIC had issued a $5 million policy of property insurance (including earthquake coverage) to HOA covering the common areas of its 66unit condominium building at 2385 Roscomare Road in Los Angeles.[2] On that date, the Northridge earthquake caused significant damage to HOA's building. HOA promptly notified AIIC and made a claim of loss.
On or about January 20, 1994, AIIC employed an adjuster to assist in the adjustment of HOA's loss. It also retained the services of a general contractor and a structural engineer to evaluate the nature and extent of the damage sustained to HOA's building. Within the following week, site inspections of the property were completed and AIIC paid an advance of $50,000 to HOA on February 1, 1994.
At about the same time, HOA retained a public adjuster and two structural engineers to assist it with the evaluation of its loss. On February 4, 1994, one of its engineers submitted a structural damage report which reflected, in part: "Internally the building seemed to have survived the earthquake with relatively little damage, with the exception of the four units located in the north and south wings of the building fronting the street ... damages to units on levels A & B were negligible." However, the report went on to make repair recommendations that were designed to "minimize any further damage which may occur from future seismic activity" (e.g., the installation of plywood on all exterior walls of the first and second floors). Within 10 days to two weeks thereafter, it was reported to AIIC that the general contractor retained by HOA was installing shear paneling unnecessary for "emergency shoring," but apparently for the purpose of meeting current building codes.[3]
After several more site inspections during the spring of 1994, representatives of the adjusters hired by AIIC and HOA agreed that HOA's adjuster would submit to AIIC a repair scope and estimate which would be used as a basis for attempting to resolve HOA's claim. On or about March 28, 1994, AIIC discovered that public records reflected that the property had a settlement problem which had existed before the earthquake. In addition, AIIC *780 later learned (through a review of HOA board meeting minutes) that there were other pre-earthquake problems, including land erosion, and water intrusion and tile buckling problems. It is AIIC's position that the impact these circumstances would necessarily have upon the damage sustained by HOA's building and the extent of HOA's covered loss had to be investigated.
Although HOA's scope and repair estimate had not yet been provided, AIIC advanced another $100,000 to HOA on May 24, 1994. On June 22, AIIC formally advised HOA's adjuster of its position on the scope of coverage under the policy: (1) repairs required by new building codes were not covered under the subject policy, (2) asbestos removal was covered only from those areas of the property which were damaged by the earthquake, (3) only consequential damage to the interiors of the units resulting from repairs to the common area were covered, and (4) no coverage existed for the plywood shear panels which were installed after the earthquake absent evidence that they were installed on an "emergency" basis to stabilize the building.[4]
HOA finally submitted its scope and estimate of repairs on September 29, 1994, which was nine months after the loss. It totaled $6,493,793 and included items such as (1) fortification of a defectively constructed foundation, (2) removal of stucco in order to install plywood sheathing, (3) repair of pre-existing floor vibration problems, (4) repair of water intrusion problems, and (5) repair of the individual units. AIIC had significant problems with this estimate and, over the next several months, it had a number of discussions with HOA's adjuster. During the same time period, AIIC continued site inspections, including inspection of individual units.
On December 19, 1994, despite its reservations about HOA's repair estimate, AIIC made another advance payment, this time in the amount of $300,000. At the time of this payment, there was still no agreement on the scope or cost of covered repairs under the policy, and AIIC contended that HOA's estimate was grossly overstated. Finally, in March 1995, HOA's adjuster withdrew the estimate, citing "problems with it."
During the spring of 1995, AIIC attempted to ascertain the extent of the preexisting problems with HOA's building. In AIIC's view, this was critical because problems with the property that pre-existed the earthquake could not properly be included in the earthquake claim. On or about May 9, 1995, AIIC's adjuster requested all expert reports and construction repair estimates which pre-dated the earthquake so that AIIC could evaluate these problems. Subsequently, on June 2, 1995, the HOA submitted a new repair estimate. This estimate was in the amount of $5,771,522, and it far exceeded AIIC's evaluation of the covered loss. Still included was the cost of items not covered under the policy such as (1) compliance with current building code regulations, (2) repair of pre-existing damage and construction and design defects, including the improperly constructed foundation, (3) installation of caissons and grading and (4) repair of floor vibrations and (5) repair of the interior of certain individual homeowner units.[5]
*781 Based on its investigation and what it believed to be covered under the policy, AIIC paid another $1 million on the claim on September 14, 1995, bringing the total payments to HOA, as of that date, to $1,450,000. Thereafter, in order to reach an agreement on the balance of HOA's claim, which was not disputed, AIIC's adjuster entered into negotiations with HOA's representative. AIIC proposed a compromise agreement on the scope and cost of repair of the earthquake damage to the HOA property covered under the policy in the amount of $2,287,783. An effort was then made to negotiate a narrative of what claims would be settled by payment of such amount, and what disputed items would remain open. HOA, however, ultimately refused to agree to a narrative. AIIC thereafter nonetheless paid an additional sum of $449,161.48, bringing the total payments made to HOA to $1,949,161.48. Following that payment, AIIC took the formal position that there was no more owing under the policy.
HOA responded by filing this action on January 25, 1996, for breach of contract and breach of the implied covenant of good faith and fair dealing. With respect to its bad faith claim, HOA sought punitive damages, arguing that AIIC's conduct, in delaying the payments that it had made and refusing to pay HOA's claim in full, constituted acts committed with malice and oppression.
The basic dispute between AIIC and HOA with respect to the latter's claim for earthquake damage to its property raised several issues on which the parties could not agree: (1) whether HOA's claim included losses for which it was not at risk (i.e., damage sustained to noncommon areas) and thus not covered under the policy, (2) whether HOA's claim included sums to perform upgrades required by current building codes but which were not covered under the policy, (3) whether HOA's claim included amounts to correct conditions, including construction or design defects, which existed prior to the earthquake and thus were not covered under the policy, (4) whether the amounts claimed by HOA exceeded those reasonably necessary to replace damaged property with comparable material and quality as to that which existed prior to the earthquake and (5) whether the professional fees and costs for emergency repairs exceeded that which were reasonably required.
Contending that its position was reasonable and that a "genuine dispute" existed between it and HOA as to each of these issues, AIIC moved for summary adjudication of HOA's cause of action for bad faith. HOA opposed this motion primarily with the declaration of its expert witness, Keith Charleston. HOA offered evidence of no facts other than those summarized above, but relied upon the opinion of Charleston to the effect that AIIC's adjustment and handling of HOA's claim was unreasonable and constituted a breach of the implied covenant of good faith. On April 28, 1998, the trial court, concluding that AIIC's position with respect to HOA's claim was reasonable as a matter of law, granted the motion. The case then went forward on HOA's first cause of action for breach of contract.
Before that cause of action could come to trial, however, the parties entered into a stipulation on April 26, 1999, that provided *782 HOA's claim could be resolved in binding arbitration. Such arbitration was conducted and, on July 22, 1999, an award was made in favor of HOA in the sum of $610,753, plus interest of $111,509 for a total award of $722,262, less a credit of $14,875. Thus, HOA's original claim of $5,771,522, was substantially rejected by the arbitrator. The sum $1,949,161,[6] already paid by AIIC, together with the sum of $610,753, found by the arbitrator to be due, represents only 45% of the original claim.
After the trial court entered a judgment of confirmation of the arbitrator's award, HOA filed this timely appeal asserting that the trial court had erred in granting AIIC's motion for summary adjudication of the bad faith cause of action. HOA argues that AIIC's handling of the claim (including, from HOA's point of view, its inadequate investigation and the delayed and inadequate payment of policy benefits) was unreasonable in the circumstances and presented an issue for the jury, not the court. Thus, HOA contends, it was improperly denied a jury trial on its second cause of action. HOA further argues that the opinions expressed by its expert, Charleston, were sufficient evidence to raise triable issues of fact which could not be resolved on a motion for summary judgment or adjudication.
AIIC counters that the essential or underlying facts are not in dispute and its position on coverage under the policy, as well as its estimate of the value of HOA's covered losses, was reasonable. It contends that, at the very least, there was a "genuine dispute" between the parties as to these issues and therefore AIIC could not be held liable for the tort of bad faith.

DISCUSSION

1. Standard of Review

Summary judgment is granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc, § 437c, subd. (c); Villa v. McFerren (1995) 35 Cal.App.4th 733, 741, 41 Cal.Rptr.2d 719.) After examining documents supporting a summary judgment motion in the trial court, this court independently determines their effect as a matter of law. (Hulett v. Farmers Ins. Exchange (1992) 10 Cal.App.4th 1051, 1057-1058,12 Cal.Rptr.2d 902.)
"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to a judgment as a matter of law.... There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (Aguilar v. Atlantic Richfield Company (2001) 25 Cal.4th 826, 850, 107 Cal.Rptr.2d 841, 24 P.3d 493 [Aguilar]; italics added.) An issue of fact becomes one of law and loses its "triable" character if the undisputed facts leave no room for a reasonable difference of opinion. (Preach v. Monter Rainbow (1993) 12 Cal.App.4th 1441, 1450, 16 Cal.Rptr.2d 320.)
A defendant moving for summary judgment bears a burden of production to make a prima facie showing, by declarations and/or other evidence, that there is a complete defense to the plaintiffs action or an absence of an essential element of *783 plaintiffs case. (Aguilar, supra, 25 Cal.4th at p. 849, 107 Cal.Rptr.2d 841, 24 P.3d 493.) "Once the defendant ... has met that burden, the burden shifts to the plaintiff ... to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff ... may not rely upon the mere allegations or denials [of his] pleadings to show that a triable issue of material fact exists but, instead [must] set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto." (Code Civ. Proc, § 437c, subd. (o)(2).)
This, as we explain, HOA has failed to do.

2. To Establish Bad Faith It Must be Shown That Insurer Acted Unreasonably or Without Proper Cause

Every contract imposes on each party an implied duty of good faith and fair dealing. (Egan v. Mutual of Omaha Ins. Co. (1979) 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141.) Simply stated, the burden imposed is "`that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'" Gruenberg v. Aetna Ins. Co. (1973) 9 Cal.3d 566, 573, 108 Cal. Rptr. 480, 510 P.2d 1032, quoting, Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 658, 328 P.2d 198.) Or, to put it another way, the "implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." (Schoolcraft v. Ross (1978) 81 Cal. App.3d 75, 80, 146 Cal.Rptr. 57; accord Fletcher v. Western National Life Ins. Co. (1970) 10 Cal.App.3d 376, 401, 89 Cal.Rptr. 78.) A "`breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself,' and it has been held that "`[b]ad faith implies unfair dealing rather than mistaken judgment...." [Citation.]' [Citation.]" (Congleton v. National Union Fire Ins. Co. (1987) 189 Cal.App.3d 51, 59, 234 Cal.Rptr. 218.) For example, in the context of the insurance contract, it has been held that the insurer's responsibility to act fairly and in good faith with respect to the handling of the insured's claim "`is not the requirement mandated by the terms of the policy itself-to defend, settle, or pay. It is the obligation ... under which the insurer must act fairly and in good faith in discharging its contractual responsibilities.' [Citation.]" (California Shoppers, Inc. v. Royal Globe Ins. Co. (1985) 175 Cal.App.3d 1, 54, 221 Cal.Rptr. 171, italics omitted, [quoting from Gruenberg v. Aetna Ins. Co., supra, 9 Cal.3d at pp. 573-574, 108 Cal.Rptr. 480, 510 P.2d 1032].)
"Thus, allegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet these criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties." (Careau & Co. v. Security Pacific Business Credit, Inc. (1990) 222 Cal.App.3d 1371, 1395, 272 Cal. Rptr. 387; accord State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1105, 53 Cal.Rptr.2d 229.)
HOA's claim of bad faith in this case rests upon the proposition that AIIC unreasonably delayed making payments *784 due on HOA's claim and failed to conduct an adequate investigation. "`[T]he ultimate test of [bad faith] liability in the first party cases is whether the refusal to pay policy benefits [or the alleged delay in paying] was unreasonable.'" (Opsal v. United Services Auto. Assn. (1991) 2 Cal. App.4th 1197, 1205, 10 Cal.Rptr.2d 352; Gourley v. State Farm Mut. Auto. Ins. Co. (1991) 53 Cal.3d 121, 127, 3 Cal.Rptr.2d 666, 822 P.2d 374.) While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence. (Paulfrey v. Blue Chip Stamps (1983) 150 Cal.App.3d 187, 196, 197 Cal. Rptr. 501.)
"The mistaken [or erroneous] withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability." (Tomaselli v. Transamerica Ins. Co. (1994) 25 Cal.App.4th 1269, 1280-1281, 31 Cal.Rptr.2d 433; Nager v. Allstate Ins. Co. (2000) 83 Cal. App.4th 284, 288, 99 Cal.Rptr.2d 348; Opsal v. United Services Auto. Assn., supra, 2 Cal.App.4th at p. 1205, 10 Cal. Rptr.2d 352.) Without more, such a denial of benefits is merely a breach of contract. Moreover, the reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of subsequent events which may provide evidence of the insurer's errors. (Cf. Filippo Industries, Inc. v. Sun Ins. Co. (1999) 74 Cal.App.4th 1429, 1441, 88 Cal. Rptr.2d 881.)
Thus, before an insurer can be found to have acted tortiously (i.e., in bad faith), for its delay or denial in the payment of policy benefits, it must be shown that the insurer acted unreasonably or without proper cause. (Dalrymple v. United Services Auto. Assn. (1995) 40 Cal. App.4th 497, 520, 46 Cal.Rptr.2d 845; Opsal v. United Services Auto. Assn., supra, 2 Cal.App.4th at p. 1205, 10 Cal.Rptr.2d 352.) However, where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute. (Dalrymple, supra, at pg. 520, 46 Cal.Rptr.2d 845; Opsal, supra, at pp. 1205-1206, 10 Cal.Rptr.2d 352.) While an insurer must give as much consideration to the interests of its insured as it does to its own (Egan v. Mutual of Omaha Ins. Co., supra, 24 Cal.3d at pp. 818-819, 169 Cal.Rptr. 691, 620 P.2d 141), "it is not required to disregard the interests of its shareholders and other policyholders when evaluating claims...." (Love v. Fire Ins. Exchange (1990) 221 Cal. App.3d 1136, 1148-1149, 271 Cal.Rptr. 246; accord Austero v. National Cas. Co. (1978) 84 Cal.App.3d 1, 30, 148 Cal.Rptr. 653, disapproved on other point in Egan v. Mutual of Omaha Ins. Co., supra, 24 Cal.3d at p. 824, fn. 7, 169 Cal.Rptr. 691, 620 P.2d 141.) In other words, an insurer is entitled to give its own interests consideration when evaluating the merits of an insured's claim. (Tomaselli v. Transamerica Ins. Co., supra, 25 Cal.App.4th at p. 1281, 31 Cal.Rptr.2d 433.)
It is now settled law in California that an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract. (Fraley v. Allstate Ins. Co. (2000) 81 Cal. App.4th 1282, 1292, 97 Cal.Rptr.2d 386.)
It is equally clear that this issue may be resolved as a matter of law in a proper case. "`[A] court can conclude as a matter *785 of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability.' [Citation.] The `genuine dispute' doctrine may be applied where the insurer denies a claim based on the opinions of experts. [Citations.]" (Fraley v. Allstate Ins. Co., supra, 81 Cal.App.4th at p. 1292, 97 Cal.Rptr.2d 386.) In Fraley, a case that involved a dispute over the cost of repairs to the insureds' fire damaged home, with each side relying on the differing opinions of their respective experts, the court held "[w]here the parties rely on expert opinions, even a substantial disparity in estimates for the scope and cost of repairs does not, by itself, suggest the insurer acted in bad faith." (Id. at p. 1293, 97 Cal.Rptr.2d 386.)
While many, if not most, of the cases finding a genuine dispute over an insurer's coverage liability have involved legal rather than factual disputes, we see no reason why the genuine dispute doctrine should be limited to legal issues. (See, e.g., Guebara v. Allstate Ins. Co. (9th Cir.2001) 237 F.3d 987, 993-994; Phelps v. Provident Life and Acc. Ins. Co. (C.D.Cal. 1999) 60 F.Supp.2d 1014, 1021-1022; Allstate Ins. Co. v. Madan (C.D.Cal.1995) 889 F.Supp. 374, 381.)[7] That does not mean, however, that the genuine dispute doctrine may properly be applied in every case involving purely a factual dispute between an insurer and its insured. This is an issue which should be decided on a case-by-case basis. (Guebara v. Allstate Ins. Co., supra, 237 F.3d at p. 994)
As the Fraley court emphasized, where an insurer, for example, is relying on the advice and opinions of independent experts, then a basis may exist for invoking the doctrine and summarily adjudicating a bad faith claim in the insurer's favor. (Fraley v. Allstate Ins. Co., supra, 81 Cal. App.4th at p. 1293, 97 Cal.Rptr.2d 386; Guebara v. Allstate Ins. Co., supra, 237 F.3d at p. 994.) We concur, however, with the caveat advanced by the Guebara court. It cautioned that an expert's testimony will not automatically insulate an insurer from a bad faith claim based on a biased investigation. It suggested several circumstances where a biased investigation claim should go to jury: (1) the insurer was guilty of misrepresenting the nature of the investigatory proceedings (see Tomaselli v. Transamerica Ins. Co. 25 Cal.App.4th 1269, 1281, 31 Cal.Rptr.2d 433 [allowing a bad faith claim to go to the jury where an insurance company without any evidence of fraud forced an insured to submit to an examination under oath, dissuaded the insured from having an attorney present, and misled the insured about the purpose of the examination]); (2) the insurer's employees lied during the depositions or to the insured; (3) the insurer dishonestly selected its experts; (4) the insurer's experts were unreasonable; and (5) the insurer failed to conduct a thorough investigation. (Guebara v. Allstate Ins. Co., supra, 237 F.3d at p. 996.)[8] As we now explain, we find that none of these circumstances *786 are present in this case and the genuine dispute doctrine may properly be applied.

3. HOA Failed to Demonstrate a Triable Issue of Fact as to AIIC's Alleged Bad Faith

When it moved for a summary adjudication of HOA's bad faith cause of action, AIIC presented evidence of the existence of a legitimate dispute with HOA as to just what was due under the policy. That evidence consisted primarily of the declaration of the officer of the claim adjustment company retained by AIIC to investigate HOA's claimed loss. That declaration spelled out in considerable detail the entire adjustment process as it unfolded. We have summarized that process in our earlier factual background discussion. The facts outlined in that declaration are not in dispute; they are not countered by HOA with any additional or different factual information.
What the evidentiary record made by the parties demonstrates is that, after the earthquake, HOA attempted to induce AIIC to treat as covered losses, and pay for, a substantial amount of repairs that, from AIIC's point of view, were not covered under the policy (e.g., damage to individual units not a part of the common areas, repairs that involved upgrades to meet current code requirements, and repairs to remedy design or construction defects or pre-existing conditions and damages sustained to the property prior to the earthquake) or involved costs and expenses that exceeded those reasonably necessary to restore the property to the condition it was in prior to the earthquake. There is no factually supported suggestion in this record that (1) AIIC ever misrepresented the nature of its investigatory activity, (2) provided any false documents or testimony, (3) did not honestly select independent experts to make the appropriate loss evaluations, (4) relied upon expert reports that were not reasonable or, (5) failed to conduct a thorough investigation.
Indeed, AIIC presented substantial evidence justifying its position. In opposing AIIC's motion, HOA essentially offered only a two page declaration of its expert who claimed to have read the claim files and, based thereon, expressed the exclusionary opinions that AIIC (1) had not conducted an adequate and thorough investigation of HOA's loss, (2) had engaged in dilatory claims handling and unreasonable adjusting practices, (3) had arrived at an inadequate initial scope of loss for the structural damage and (4) had failed to obtain all necessary engineering inspections and reports. HOA's expert then concluded that, by such actions, AIIC had breached the implied covenant of good faith and fair dealing. HOA argues that such "evidence" is sufficient to raise a triable issue of fact. We disagree.
Although an insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind, "[t]he question becomes one of law ... when, because there are no conflicting inferences, reasonable minds could not differ. [Citations.]" (Walbrook Ins. Co. v. Liberty Mutual Ins. Co. (1992) 5 Cal. App.4th 1445, 1454-1455, 7 Cal.Rptr.2d 513.) "Thus, the issue of bad faith may, in specific instances, be treated as an issue of law. [Citation.] An appellate court reviews a judgment on an issue of law de novo. [Citations.]" (Dalrymple v. United Services Auto. Assn., supra, 40 Cal. App.4th at p. 511, 46 Cal.Rptr.2d 845.) Given the record we have before us, we find that this case falls within the ambit of the foregoing principles. We are not called upon to determine whether AIIC's view as to the proper outcome of the adjustment *787 process was correct. It is only necessary for us to determine that, in light of the record as a whole, its position with respect to the disputed points was reasonable or that AIIC had proper cause to assert the positions that it did.
We agree with the Dalrymple court's analysis of this issue when it concluded that, as long as there is no dispute as to the underlying facts, it is for the court, not a jury, to decide whether the insurer had "proper cause." (Dalrymple v. United Services Auto. Assn., supra, 40 Cal.App.4th at p. 517, 46 Cal.Rptr.2d 845.)[9] Only one inference can be drawn from this record. AIIC had a reasonable and legitimate basis for questioning HOA's claim, as the ultimate resolution of that claim by the arbitrator confirmed. Viewed at the time AIIC acted, the record contains substantial and unrebutted evidence that HOA included in its claim matters that were not covered under the policy and/or related to pre-existing conditions, including design and construction defects, and sought to claim unreasonable repair and professional fees and expenses. AIIC had every right to question these matters and to require HOA to provide full and proper support for its demands. HOA failed to do so. We can find nothing in this record that supports a contrary conclusion. Certainly the conclusionary declaration of HOA's expert does not. That simply represented his opinion on the ultimate question of whether AIIC had proper cause to contest HOA's claims, a question, as already noted, that is to be decided by the court, not a jury. As the subsequent arbitration results demonstrated, HOA was able to justify only 45% of its original claim and 80% of that sum had been paid by AIIC before HOA ever filed suit.
The parties had a clear contract dispute as to the balance of the amount due on HOA's claim; it was resolved in the stipulated arbitration proceedings and HOA received an additional award (although it was less than 20% of the remaining balance it was claiming). The parties did not have a tort dispute; there is no factual issue as to "bad faith" on AIIC's part. It is not enough to say, as HOA's expert essentially does, that AIIC could have done a better job in adjusting HOA's claim. Sloppy or negligent claims handling does not rise to the level of bad faith. HOA is fully compensated by its breach of contract award together with interest on the delayed or unpaid sums found to be due. For all of the reasons discussed above this matter should now be concluded.[10]

DISPOSITION
The judgment is affirmed. AIIC shall recover its costs on appeal.
KLEIN, P.J., and KITCHING, J., concur.
NOTES
[1] There is essentially no dispute as to the underlying facts on which HOA's bad faith claim is based. The facts we recite are based upon AIIC's separate statement of undisputed facts which HOA did not effectively counter. To the extent that HOA purported to quarrel with AIIC's separate statement, it did so by attempting to recharacterize, or by arguing with the significance of, certain undisputed facts. HOA did not offer any additional or competing facts; the opinions expressed by its expert were conclusionary in nature and essentially were based on AIIC's factual presentation.
[2] In providing this general description we note the fact that HOA's insurable interest applied only to the common areas of the condominium property and not to the interior portions of the 66 individual units. The claimed damage to the individual units is the subject of another proceeding which is also pending before us and which we have resolved concurrently with this matter. (Adelman v. Associated International Insurance Company (2001) 90 Cal.App.4th 352, 108 Cal. Rptr.2d 788.)
[3] This information is relevant to the issues before us. As we discuss below, AIIC had no obligation to provide repairs to meet current building codes or to otherwise "upgrade" the property; its obligation was limited to repairing the loss suffered by HOA.
[4] There does not appear to be any claim by HOA that AIIC's characterization of the limits of its coverage is incorrect. The relevant policy language is not cited to us by either party, but HOA does not contend that the AIIC policy provides coverage for any of these listed items.
[5] The estimate included approximately $900,000 worth of repairs to fix floor vibration. AIIC had determined, however, that the vibration issue was the subject of a lawsuit by the HOA against the developer of the condominiums brought in 1978, fourteen years prior to the earthquake. Furthermore, AIIC learned, after inspecting the floor joists, that such vibration was the result of a construction defect consisting of over-spanned and undersized joists.
[6] This sum, which was paid by AIIC prior to the filing of this action, represents approximately 80% of the value of HOA's total covered loss as ultimately determined by the arbitrator.
[7] For example, a coverage dispute involving the proper construction and application of policy language would be a legal dispute, while one involving a disagreement as to the reasonable value of an insured's claim would be a factual one. Provided there is no dispute as to the underlying facts (e.g., what the parties did and said), then the trial court can determine, as a matter of law, whether such dispute is "genuine." In making that decision, the court does not decide which party is "right" as to the disputed matter, but only that a reasonable and legitimate dispute actually existed.
[8] This list is certainly not intended to be exhaustive of the circumstances that may justify submission to a jury of an insurer's "genuine dispute" defense to a claim of bad faith. Nor, we must also add, may an insurer insulate itself from liability for bad faith conduct by the simple expedient of hiring an expert for the purpose of manufacturing a "genuine dispute."
[9] See footnote 7, ante.
[10] In view of this result, we need not reach or discuss AIIC's attack on HOA's punitive damage claim. It was an integral part of, and falls with our rejection of, HOA's bad faith cause of action.