Victor **RABINOWITZ**, a resident of California, Plaintiff—Appellant,

v.

**PAUL REVERE LIFE INSURANCE COMPANY**, a Delaware corporation, Defendant—Appellee.

No. 01–57094.

D.C. No. CV–00–07675–GAF.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2004.

Decided March 2, 2004.

Jeffrey C. Metzger, Laguna Hills, CA, Donna Bader, Laguna Beach, CA, for Plaintiff–Appellant.

Robert H. Hess, Robert J. McKennon, Barger & Wolen, LLP, Irvine, CA, for Defendant–Appellee.

Before REINHARDT, THOMPSON, and WARDLAW, Circuit Judges.

## MEMORANDUM *

Victor Rabinowitz appeals from the district court's summary judgment in favor of Paul Revere Life Insurance Company. We affirm in part, reverse in part, and remand for further proceedings.

The central issue raised on appeal is whether Rabinowitz was required to submit to random drug testing under the

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

terms of his Paul Revere insurance policy. We conclude that triable issues of fact preclude the resolution of this issue at this juncture.

## A. "PHYSICIAN'S CARE" PROVISION

 Paul Revere contends that Rabinowitz was required to submit to random drug testing under the "Physician's Care" provision of the policy (Section 1.8). The district court agreed, reasoning that Rabinowitz had failed to demonstrate that Paul Revere's drug testing requirement was inconsistent with the nature of his disorder.

We disagree with the district court's interpretation of the "Physician's Care" provision. This provision required Paul Revere to approve Rabinowitz's treatment plan if that plan was (1) appropriate for his condition under prevailing medical standards; (2) consistent with the nature of his disorder; and (3) intended to return him to his occupation. The proper inquiry is whether Dr. Soldinger's treatment plan met these requirements.

Paul Revere argues that Dr. Soldinger's treatment was inadequate and outside of prevailing medical standards because, without confirmation that Rabinowitz was not using illicit drugs, there was no way to determine the etiology of Rabinowitz's symptoms or the possible permanency of his condition. A review of Dr. Holt's report, however, shows that there were a number of etiological factors besides possible illicit drug use that precluded her from determining the cause of Rabinowitz's cognitive defects. Specifically, Dr. Holt pointed to the side effects of prescribed drugs (Lamictal and Wellbutrin), Rabinowitz's depression and anxiety, the pain he experiences as a result of migraines and back problems, and the possibility of cerebrovascular disease. Even if Rabinowitz submitted to drug tests, it appears that questions regarding the cause and permanence of his condition would remain.

Dr. Blaustein indicated in his report that random drug testing is *not* necessarily a component of treating substance abuse if the level of treatment is adequate. A factual dispute exists as to whether the level of Dr. Soldinger's treatment was adequate under prevailing medical standards. Dr. Blaustein opined that Rabinowitz needed to see Dr. Soldinger more frequently and increase attendance at AA or CA meetings. However, Dr. Soldinger explained that Rabinowitz was obtaining as much treatment as his financial condition would permit and was attending AA meetings as often as recommended by Hazeldon (two times a week). Dr. Soldinger stated that his treatment plan for Rabinowitz has, at all times, been consistent with prevailing medical standards.

Paul Revere argues that Dr. Soldinger admitted that his treatment plan would be inadequate if Rabinowitz began using drugs again. We disagree. During his deposition, Dr. Soldinger explained that he and Rabinowitz agreed that if Rabinowitz began using drugs again, Rabinowitz would go to Hazeldon. Dr. Soldinger said that if he discovered that Rabinowitz was currently using drugs, "[Rabinowitz] would have to go in the hospital." Although the evidence shows that Dr. Soldinger and Rabinowitz believed it would be best for Rabinowitz to be readmitted to Hazeldon if he relapsed, Dr. Soldinger did not say that if Rabinowitz used illicit drugs his current treatment plan would be inadequate under prevailing medical standards.

With regard to whether Dr. Soldinger's treatment plan was "intended to return" Rabinowitz to his occupation, there is no evidence that Dr. Soldinger did not have the optimistic ultimate goal that Rabinowitz would someday reach total recovery. It appears that Dr. Soldinger's goal was to assist Rabinowitz in recovering to the fullest extent possible, which would include

the possibility that he might return to work. The appropriateness of Dr. Soldinger's treatment plan presents the central issue in this case, and Paul Revere's challenge to that plan raises genuine issues of material fact.

## B. "EXAMINATIONS" CLAUSE

■ Paul Revere also argues that the independent medical examinations clause of the policy (Section 9.5) requires Rabinowitz to submit to drug testing and his refusal to do so relieved Paul Revere of its obligation to pay policy benefits. The "Examinations" clause provides: "At our expense, We can have a physician of Our choice examine you as often as reasonably required while Your claim is continuing."

Although there may be circumstances in which a urine or blood sample is reasonably required as part of a physical examination, here, there are questions of fact as well as law regarding the reasonableness of requiring Rabinowitz to undergo drug testing. On at least one occasion, Dr. Soldinger opined that drug testing was contraindicated and had no therapeutic value for Rabinowitz. Whether drug testing would be inconsistent with Rabinowitz's medical treatment under prevailing medical standards, or would exacerbate his psychological or emotional problems, are genuine issues of material fact which the parties dispute.

## C. RABINOWITZ'S CLAIMS AND PAUL REVERE'S COUNTER- CLAIM

Rabinowitz's complaint stated causes of action for (1) breach of contract; (2) con-

tractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the implied covenant of good faith and fair dealing; and (4) declaratory relief. Paul Revere's counterclaim sought restitution of all benefits paid under a reservation of rights. The district court granted summary judgment in favor of Paul Revere on all of Rabinowitz's claims and on Paul Revere's counterclaim.

As discussed above, there are factual disputes as to whether Rabinowitz's refusal to undergo drug testing relieved Paul Revere of its obligation to make payments under the policy.[1] We therefore reverse the district court's summary judgment in favor of Paul Revere on Rabinowitz's claims for breach of contract (claim 1) and for declaratory relief (claim 4), and on Paul Revere's counterclaim. We remand these claims to the district court for further proceedings.

■ We affirm, however, the district court's summary judgment in favor of Paul Revere on Rabinowitz's second and third claims for contractual and tortious breach of the implied covenant of good faith and fair dealing. To establish that Paul Revere acted in bad faith, Rabinowitz needed to present evidence that Paul Revere's delay in making payments was unreasonable. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 346, 108 Cal.Rptr.2d 776 (2001). "The mistaken withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under

---

1. In addition to arguing that it had no obligation to pay benefits, Paul Revere contends that Rabinowitz's breach of contract claim fails because Paul Revere paid full benefits and Rabinowitz did not suffer any economic damage. However, Rabinowitz has a valid claim that on several occasions he was not *timely* paid in accordance with the terms of

the contract. In addition, Rabinowitz allegedly suffered some cognizable economic damage: Rabinowitz claims that in response to Paul Revere's actual and threatened withholding of payments, he paid Dr. Tomaszewski $2,400 for an evaluation, which Rabinowitz hoped would convince Paul Revere of the permanency of his condition.

California law, does not expose the insurer to bad faith liability." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1280–81, 31 Cal.Rptr.2d 433 (1994). Here, there was a legitimate dispute as to whether Dr. Soldinger's treatment of Rabinowitz complied with the "Physician's Care" provision of the policy and whether Rabinowitz was required to submit to drug testing under the "Examinations" clause. Paul Revere did not act unreasonably in delaying the payments at issue.

AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings consistent with this memorandum disposition. Each party shall bear his and its own costs for this appeal.