ITTELLA FOODS, INC.,
Plaintiff—Appellee,

v.

ZURICH INSURANCE COMPANY,
Defendant,

and

Northern Insurance Co. of New York,
Defendant—Appellant.

No. 02–56383.

D.C. No. CV–01–03620–LGB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 29, 2004.

Decided May 21, 2004.

Matthew B.F. Biren, Biren & Katzman, Brentwood, CA, Norman Pine, Pine & Pine, Sherman Oaks, CA, for Plaintiff–Appellee.

Craig S. Simon, Berger Kahn, San Diego, CA, for Defendant and Defendant–Appellant.

Ethan A. Miller, Barber & Wolen LLP, San Francisco, CA, for Defendant–Appellant.

Before D.W. NELSON, FERNANDEZ, and KLEINFELD, Circuit Judges.

## MEMORANDUM *

Prior to trial, Northern Insurance paid Ittella Foods approximately $505,000 without reserving its rights or making any express agreement. The parties' stipulations in the final pretrial conference order following the district court's partial summary judgment highlight the significance of this payment. They "agreed on an amount of benefits—$445,000—which were then paid by Northern Insurance Company with interest computed from January 5, 2001 to the date of payment." [1] They also agreed that there were no compensatory damages in dispute.[2] They further agreed that the only damages in dispute were those sought by Ittella Foods for attorneys' fees, litigation costs, and punitive

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. *Ittella Foods, Inc. v. Zurich Insurance Co.,* No. CV 01–03620–LGB (C.D.Cal. Apr. 29, 2002) (final pretrial conference order) (paragraph 5(K)).

2. *Id.* (paragraph 7(C)(3)).

damages.[3] Thus, the parties did not contest any money owed on the policy; the only question was whether Northern Insurance's initial denials of coverage, prior to the subsequent payments, were in such egregious bad faith as to make it liable for punitive damages.

Bad faith can be refuted if no money is owed on a policy, or if, even though money is owed, the insurer's refusal to pay was reasonable and based upon a good faith dispute about the existence or extent of coverage.[4] In this case, we need not reach a conclusion on whether Northern Insurance acted in bad faith because, under California law, a finding of bad faith is not sufficient to impose punitive damages.[5] California law distinguishes between misconduct amounting to bad faith,[6] and misconduct subjecting a party to liability for punitive damages.[7] Because only punitive damages are in dispute, we need only decide whether Northern Insurance's alleged misconduct supports an award of punitive damages.

Bad faith, which, as explained above, need not be decided, is a breach of the implied contractual covenant of good faith and fair dealing.[8] If a party "injure[s] the right of the other to receive the benefits of the agreement," such as when an " 'insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.' "[9]

For punitive damages, the standard is statutory. The California Civil Code provides that the plaintiff has to prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."[10] " 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."[11] " 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."[12] " 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."[13] Despicable conduct is conduct so "vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people," and "[has] the character of outrage frequently associated with crime."[14] " 'Something more than the

---

**3.** *Id.* (paragraph 7(C)(1)).

**4.** *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,* 90 Cal.App.4th 335, 108 Cal.Rptr.2d 776, 784–85 (2001); *Dalrymple v. United Servs. Auto. Ass'n,* 40 Cal. App.4th 497, 46 Cal.Rptr.2d 845, 857 (1995).

**5.** *Tomaselli v. Transamerica Ins. Co.,* 25 Cal. App.4th 1269, 31 Cal.Rptr.2d 433, 440–41, 443–44 (1994).

**6.** *Chateau Chamberay,* 108 Cal.Rptr.2d at 783–85.

**7.** *Diamond Woodworks, Inc. v. Argonaut Ins. Co.,* 109 Cal.App.4th 1020, 135 Cal.Rptr.2d 736, 756–57 (2003).

**8.** *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141 (Cal.1979).

**9.** *Id.* (quoting *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 575, 108 Cal.Rptr. 480, 510 P.2d 1032 (Cal.1973)).

**10.** Cal. Civ.Code § 3294(a).

**11.** *Id.* § 3294(c)(2).

**12.** *Id.* § 3294(c)(3).

**13.** *Id.* § 3294(c)(1).

**14.** *Tomaselli,* 31 Cal.Rptr.2d at 444 (internal quotation marks omitted).

mere commission of a tort is always required for punitive damages.' "[15]

"[P]unitive damages have been assessed against insurance companies most commonly where a showing has been made of a continuous policy of nonpayment of claims."[16] Bad faith can be found on a more probable than not standard, but a punitive damage award requires clear and convincing evidence.[17] To be clear and convincing, the evidence has to be "so clear as to leave no substantial doubt [and] sufficiently strong to command the unhesitating assent of every reasonable mind."[18] A mistake of law by an insurance company, an honest error of judgment, overzealousness, or negligence cannot support punitive damages.[19] Where there is nothing done that is "evil, criminal, recklessly indifferent to the rights of the insured, or with a vexatious intention to injure," a punitive damages award must be reversed.[20]

In this case, assuming arguendo that the insurance company did deny coverage in bad faith and failed to pay the roughly half-million dollars that it owed until being bludgeoned with a lawsuit,[21] the evidence nevertheless does not permit the conclusion that California's strict punitive damage standard was met. Reasonable people could conclude that the insurance company was trying to chisel Ittella Foods, but they simply could not conclude that its conduct rose to the extreme level required by the statutory standard. We cannot say that the evidence was so one-sided as to meet the clear and convincing standard for the sort of conduct to which the California punitive damages standard is limited.

Accordingly, the judgment is AFFIRMED as to the compensatory damages, the judgment is REVERSED as to the punitive damages, and the judgment is VACATED so the district court can strike the punitive damages. Each party shall bear its own costs on appeal.

---

**15.** *Taylor v.Super. Ct. of L.A. County,* 24 Cal.3d 890, 894, 157 Cal.Rptr. 693, 598 P.2d 854 (1979) (quoting Wm. Prosser, Law of Torts § 2 (4th ed.1971)).

**16.** *Tomaselli,* 31 Cal.Rptr.2d at 444.

**17.** Cal. Civ.Code § 3294(a).

**18.** *In re Angelia P.,* 28 Cal.3d 908, 171 Cal. Rptr. 637, 623 P.2d 198, 204 (1981) (internal quotations omitted).

**19.** *See Tomaselli,* 31 Cal.Rptr.2d at 444 n. 14.

**20.** *Id.* at 445.

**21.** If the issue *were* properly before us for decision, we would be constrained to say that the evidence was not sufficient to support a tortious breach of the covenant of good faith and fair dealing.

