Filed 4/9/13  Morgan v. Allstate Ins. Co. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RUBY D. MORGAN, | B237788 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC440640) |
| v. | |
| ALLSTATE INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ernest M. Hiroshige, Judge.  Affirmed.

Law Offices of Eric Bryan Seuthe & Associates and Eric Bryan Seuthe for Plaintiff and Appellant.

McKenna Long & Aldridge, Peter H. Klee, and Theona Zhordania for Defendant and Respondent.

_____

Plaintiff and appellant Ruby D. Morgan appeals from a summary judgment entered in favor of defendant and respondent Allstate Insurance Company (Allstate). We conclude that the trial court rightly determined that plaintiff failed to present a triable issue of material fact on her bad faith claim against Allstate. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Allstate Insured Plaintiff's Vehicle*

Plaintiff was insured under an Allstate automobile policy with an underinsured motorist (UIM) limit of $250,000. The policy provides, in relevant part: "The insured person may be required to take medical examinations by physicians we choose, as often as we reasonably require. We must be given authorization to obtain medical reports and copies of records."

*The Underlying Incident and Plaintiff's Claim Against the Other Driver*

On May 28, 2009, plaintiff was involved in an automobile accident. According to Dr. Philip A. Sobol, approximately one to two days later, plaintiff "experienced increased pain and discomfort in her low back and left hip, . . . radiating to her left lower extremity."

Plaintiff made a claim against the other driver.

*Plaintiff Submits a UIM Claim to Allstate*

On November 12, 2009 (before the other driver's insurer had paid anything), plaintiff's attorney sent a letter to Allstate, notifying the insurance company that plaintiff's medical bills at that point exceeded $18,000 and she was still in treatment with Dr. Sobol. The letter further advised Allstate that plaintiff "wish[ed] to proceed to uninsured motorist arbitration" and proposed several potential arbitrators. Moreover, the letter indicated that plaintiff was making "a formal demand for the payment of her policy limits in settlement of her uninsured motorist claim."

While some medical records were enclosed with the letter, the package did not include any medical evaluations or reports for three of the five different times Dr. Sobol had indicated that he examined plaintiff.

2

*Plaintiff Notifies Allstate of the Settlement with the Other Driver*

On November 19, 2009, plaintiff's attorney notified Allstate of the settlement with the other driver. On November 23, 2009, the claim was settled for $15,000, thereby reducing plaintiff's UIM limit to $235,000.[1]

*Allstate Requests Medical Authorizations; Plaintiff Fails to Provide Them*

On November 20, 2009, Allstate called plaintiff's attorney to request further information regarding the claim. In accordance with her attorney's request that all communication be in writing, on that same day, Allstate sent a letter to plaintiff's attorney, asking that plaintiff sign and return certain enclosed medical authorizations.

The parties exchanged correspondence on November 30, 2009. Allstate sent another letter to plaintiff's counsel asking that plaintiff sign authorizations to allow Allstate to obtain her medical records. Plaintiff's attorney also wrote to Allstate. The letter reiterated plaintiff's demand for arbitration: "Based upon our complete understanding of Allstate's claims handling procedures and practices, we must demand that this matter proceed expeditiously to an underinsured motorist arbitration hearing." Plaintiff's counsel did not provide the requested authorizations, stating: "Please be advised that our office will not permit our client to execute blank authorizations."

*Allstate's Discovery Requests*

Because plaintiff's attorney insisted on arbitration, on or about December 3, 2009, Allstate assigned the claim to counsel to represent it in the arbitration proceeding. On December 9, 2009, Allstate's counsel served plaintiff's counsel with formal discovery; discovery responses were due by January 13, 2010. Plaintiff failed to provide timely responses.

On January 26, 2010, Allstate sent a letter to plaintiff's attorney requesting the overdue discovery responses, medical authorizations, and a list of medical providers. Plaintiff's attorney responded on February 11, 2010, objecting to Allstate's request for

---

[1]	The policy provides, in relevant part: "The limits of Coverage SS [UIM coverage] will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured motor vehicle." (See also Ins. Code, § 11580.2, subd. (p)(5).)

3

"blanket" medical authorizations and indicating that he would provide the authorizations only if Allstate agreed to (1) provide the names of the medical facilities that Allstate intended to subpoena; (2) limit requests of medical records to those dating back 10 years; (3) stipulate to the authenticity of plaintiff's medical records for purposes of arbitration; and (4) forward complimentary copies of all medical records to his office.

That same day, Allstate agreed to plaintiff's conditions, noting: "In regards to your February 11, 2010, letter I am agreeable to your four requests. However, since I have not received your client's discovery responses I do not know all of the medical providers she treated with for this loss. I only intend to obtain the medical records from the medical providers who are relevant to her claimed injuries from this accident."

By early March, Allstate still had not received plaintiff's medical authorizations. Consequently, on or about March 8, 2010, Allstate subpoenaed medical records from Dr. Sobol, the only medical provider that Allstate was aware of.

On March 16, 2010, Allstate sent another letter to plaintiff's attorney, notifying him that Allstate still had not received plaintiff's discovery responses. Sometime after that date, Allstate received the overdue discovery responses.

*Allstate's Review of Plaintiff's Medical Records*

In April 2010, Allstate received plaintiff's medical records pursuant to its subpoena. On April 15, 2010, Allstate retained Dr. Henry W. Lubow to review plaintiff's records. On April 19, 2010, Allstate received additional subpoenaed medical records and forwarded them to Dr. Lubow.

Dr. Lubow concluded that plaintiff did not suffer the injuries that she claimed and that she had been excessively treated.

*Allstate Evaluates and Determines Plaintiff's Claim; Plaintiff Submits Supplemental Medical Report*

On May 14, 2010, the same day it received Dr. Lubow's report, Allstate evaluated plaintiff's UIM claim. Based upon his opinion and other information it had gathered, Allstate concluded that plaintiff's claim was worth, at most, $33,000 ($18,000 after the applicable offset).

4

The same day, before Allstate had an opportunity to extend a settlement offer, and only five days before the scheduled arbitration, plaintiff submitted to Allstate a new "supplemental" medical report prepared by Dr. Sobol. This supplemental report claimed, for the first time, that plaintiff needed "a series of lumbar epidural steroid injections" and may even require lower back surgery.

Allstate forwarded the supplemental report to Dr. Lubow for review.

*Dr. Lubow's Supplemental Report; Allstate's Settlement Offer*

Dr. Lubow reviewed Dr. Sobol's supplemental report and prepared his own supplemental report to address it. On May 18, 2010, the day before arbitration, Allstate received and reviewed Dr. Lubow's supplemental report. Dr. Lubow opined that there was no reasonable medical basis for the epidural injections or lower back surgery recommended by Dr. Sobol. Later that day, Allstate authorized its counsel to make an $18,000 settlement offer to plaintiff. Plaintiff claims that Allstate's counsel did not make the offer prior to arbitration.

*Arbitration*

On May 19, 2010, the claim proceeded to arbitration. During the arbitration, plaintiff demanded that Allstate pay her $150,000.

Ultimately, the arbitrator awarded plaintiff $65,000 ($50,000 after the applicable offset). Allstate immediately paid the award in full.

*The lawsuit*

On June 28, 2010, plaintiff initiated this action against Allstate. In the first amended complaint, filed September 22, 2010, plaintiff asserted claims for breach of the implied covenant of good faith and fair dealing, fraud, intentional misrepresentation, and negligent misrepresentation. Allstate's demurrer to plaintiff's fraud and misrepresentation claims was sustained with leave to amend, but plaintiff elected not to amend her complaint.

*Allstate's successful motion for summary judgment*

On December 22, 2010, Allstate moved for summary judgment or, in the alternative, summary adjudication of plaintiff's punitive damages claim. Plaintiff opposed the motion.

After entertaining oral argument and allowing the parties to submit supplemental briefs, the trial court granted Allstate's motion. Likening the instant case to *Rappaport-Scott v. Interinsurance Exchange of the Automobile Club* (2007) 146 Cal.App.4th 831 (*Rappaport-Scott*), it found that there was a genuine dispute between the parties. It further found no triable issue of fact as to whether Allstate unreasonably delayed in evaluating plaintiff's claim; after all, plaintiff was "slow to provide discovery responses" and submitted a supplemental medical report the day before arbitration began. Moreover, the trial court was not convinced by plaintiff's contention that Allstate insisted that she execute blank medical authorizations in bad faith. Finally, the trial court rejected plaintiff's claim that Allstate's alleged failure to make a settlement offer showed bad faith.

Judgment was entered, and plaintiff's timely appeal ensued.

## DISCUSSION

I. *Standard of review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

Ordinarily, whether an insurer has acted unreasonably, and thus in bad faith, is a question of fact. "The question becomes one of law only when, because there are no conflicting inferences, reasonable minds could not differ." (*Walbrook Ins. Co. v. Liberty Mutual Ins. Co.* (1992) 5 Cal.App.4th 1445, 1454.)

6

II. *The trial court did not err*

"The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing." (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720.) "An insurer's obligations under the implied covenant of good faith and fair dealing with respect to first party coverage include a duty not to unreasonably withhold benefits due under the policy. [Citation.] An insurer that unreasonably delays, or fails to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant." (*Rappaport-Scott*, *supra*, 146 Cal.App.4th at p. 837.) In other words, tort liability only arises if the conduct was without proper cause. (*Ibid*.)

An insurer acts unreasonably, or without proper cause, when its "'failure or refusal to discharge contractual responsibilities [is] prompted not by an honest mistake, bad judgment or negligence *but rather by a conscious and deliberate act*.'" (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105.) "Bad faith implies dishonesty, fraud and concealment." (*Merritt v. Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 876.)

Moreover, where there is a genuine dispute regarding either coverage or the amount of payment due, the insurer cannot be held liable for breach of the implied covenant. (*Rappaport-Scott*, *supra*, 146 Cal.App.4th at p. 837.) In deciding whether there is a genuine dispute, "the court does not decide which party is 'right' as to the disputed matter, but only that a reasonable and legitimate dispute actually existed." (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 348, fn. 7.) The existence of a genuine dispute is a question of law when the evidence is undisputed and only one reasonable inference can be drawn from the evidence. (*Id*. at p. 346.)

Here, the trial court rightly determined that Allstate did not act in bad faith in evaluating plaintiff's claim. As the trial court found, there was a genuine dispute between plaintiff's demand and Allstate's settlement offer, as evidenced by the large disparity between the arbitration award and plaintiff's demand. (*Rappaport-Scott*, *supra*, 146 Cal.App.4th at p. 837.)

Plaintiff urges us to reverse, claiming that the genuine dispute rule does not come into play because Allstate did not thoroughly and fairly investigate her claim. According to plaintiff, Allstate delayed in obtaining plaintiff's medical records. The undisputed evidence shows otherwise. Although on November 12, 2009, plaintiff's counsel forwarded to Allstate plaintiff's medical records from Dr. Sobol, plaintiff never provided Allstate with all of the medical information that it needed to evaluate plaintiff's claim any more expeditiously than it did. Despite numerous requests from Allstate, plaintiff delayed in responding to Allstate's formal discovery requests and never completed the requisite medical authorizations. She even provided Allstate with a supplemental medical report from her treating physician just days before the scheduled arbitration. Under these circumstances, Allstate cannot be liable for any delay in resolving plaintiff's claim.

Plaintiff claims that there was an unreasonable delay because Allstate waited three to four months before serving a subpoena on Dr. Sobol.[2] But this evidence ignores all the other evidence of Allstate's efforts to obtain the necessary medical information directly from plaintiff. Allstate's attempt to obtain the information through medical authorizations and through plaintiff's counsel cannot be characterized as unreasonable. In defending her refusal to sign blanket medical authorizations, plaintiff directs us to

---

[2] Notably, there is no evidence that plaintiff notified Allstate that Dr. Sobol was her only treating physician. Absent this critical information from plaintiff, Allstate could not have guessed on whom to serve the subpoenas.

Civil Code sections 56.11, subdivision (e),[3] and 56.21, subdivision (e).[4] But, as pointed out by Allstate, Civil Code section 56.11 contains an exception for insurers. (Civ. Code, § 56.10, subd. (c)(2).)[5] And, Civil Code section 56.21 applies only to the disclosure of medical records from an employer, which Allstate was not seeking. (Civ. Code, § 56.21.)

Relying upon *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1242 (*Brehm*), plaintiff further argues that her evidence that Allstate never conveyed a settlement offer prior to arbitration creates a triable issue of fact as to whether Allstate attempted to resolve the claim prior to arbitration. Plaintiff misstates the holding in *Brehm*. *Brehm* does not require an insurance company to make a settlement offer; its duty is "to honestly assess [the insured's] claim and to make a reasonable effort to resolve any dispute with him." (*Brehm*, *supra*, at p. 1242.) That is exactly what Allstate

---

[3]     Civil Code section 56.11, subdivision (e), provides, in relevant part: "Any person or entity that wishes to obtain medical information pursuant to subdivision (a) of Section 56.10, other than a person or entity authorized to receive medical information pursuant to subdivision (b) or (c) of Section 56.10, except as provided in paragraph (21) of subdivision (c) of Section 56.10, shall obtain a valid authorization for the release of this information. [¶] An authorization for the release of medical information by a provider of health care, health care service plan, pharmaceutical company, or contractor shall be valid if it: [¶] . . . [¶] (e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information."

[4]     Civil Code section 56.21, subdivision (e), provides, in relevant part: "An authorization for an employer to disclose medical information shall be valid if it complies with all of the following: [¶] . . . [¶] (e) States the name or functions of the employer or person authorized to disclose the medical information."

[5]     Civil Code section 56.10, subdivision (c)(2), provides, in relevant part: "A provider of health care or a health care service plan may disclose medical information as follows: [¶] . . . [¶] (2) The information may be disclosed to an insurer, employer, health care service plan, hospital service plan, employee benefit plan, governmental authority, contractor, or any other person or entity responsible for paying for health care services rendered to the patient, to the extent necessary to allow responsibility for payment to be determined and payment to be made."

9

tried to do here. But, its efforts were stymied by plaintiff's refusal to provide the medical authorizations to Allstate so that Allstate could evaluate plaintiff's claim.

## DISPOSITION

The judgment is affirmed. Allstate is entitled to costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
       ASHMANN-GERST


We concur:


_____, J.
    CHAVEZ


_____, J.*
    FERNS

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.