[No. B121149. Second Dist., Div. Seven. Mar. 23, 2000.]

STEINY AND COMPANY, INC., Plaintiff, Cross-defendant and Appellant, v.
CALIFORNIA ELECTRIC SUPPLY COMPANY, INC., Defendant and Respondent;
MORLEY CONSTRUCTION COMPANY, Defendant, Cross-complainant and Appellant;
HUGHES AIRCRAFT COMPANY, Defendant and Appellant.

[No. B124698. Second Dist., Div. Seven. Mar. 23, 2000.]

STEINY AND COMPANY, INC., Plaintiff, Cross-defendant and Respondent, v.
MORLEY CONSTRUCTION COMPANY, Defendant, Cross-complainant and Appellant.

COUNSEL

Richard D. Corona and Richard J. Messer for Plaintiff, Cross-defendant and Appellant and for Plaintiff, Cross-defendant and Respondent.

Boornazian, Jensen & Garthe, David R. Sidran and Todd D. Ruggiero for Defendant, Cross-complainant and Appellant and for Defendant and Appellant.

Rintala, Smoot, Jaenicke & Rees and Peter C. Smoot for Defendant and Respondent.

OPINION

NEAL, J.—

SUMMARY

Where a plaintiff's proper invocation of the trade secrets privilege prevents a defendant from examining the basis for the plaintiff's damage claim, the trial court may properly bar the plaintiff's damage evidence at trial. If a buyer and a seller exchange invoice and purchase order with conflicting warranty terms, but their conduct shows that a contract has been formed, California Uniform Commercial Code section 2207 applies to form a contract around the parts of the invoice and purchase order which agree, supplemented by the other applicable provisions of the Commercial Code.

FACTS AND TRIAL COURT PROCEEDINGS

Appellant Morley Construction Company (Morley) was the general contractor for seismic upgrade work at a facility owned by appellant Hughes Aircraft Company (Hughes). Morley subcontracted with appellant Steiny and Company, Inc. (Steiny) for supply and installation of an electric switchboard with circuit breakers. Steiny bought the switchboard from respondent California Electric Supply Company, Inc. (California). The switchboard was manufactured by Cutler Hammer, Inc. (Cutler).

The switchboard exploded two days after it was powered up, causing a 16-hour power outage.

Hughes sued Morley for damages to Hughes's business caused by the power interruption. Morley sued Steiny for indemnity against damages Morley was required to pay Hughes. Steiny sued Morley for withholding $412,000 in payment for Steiny's work, claiming interest on its damages "at the maximum legal rate." Steiny also sued California for supplying defective switchboard equipment. Steiny alleged breach of the express warranties of merchantability and fitness for intended use.

Morley agreed to pay $477,896 to settle with Hughes.

California and Cutler propounded discovery seeking information about the basis for the Hughes-Morley settlement, and about Hughes's damages from the power outage. For example, they requested production of all documents relating to Morley's claim for damages against Steiny; and they propounded interrogatories asking that Hughes state the amount of damages it claimed and the way it calculated them.

Morley and Hughes moved for a protective order. They urged that the information needed to support Hughes's damage calculations was proprietary. They asked that they be required to reveal their damage calculations only in a "general spreadsheet showing final accounting numbers," and not be required to provide a "detailed accounting breakdown."

The trial court granted the motion for a protective order, and appointed a special master to "marshall [*sic*] a spreadsheet summary of Hughes' damage calculations." The court ordered that the special master provide the parties only with the information in the spreadsheet, and not a copy of it. The court further ordered that Hughes and Morley need not produce, at any time, "any back-up information underlying [the] spreadsheet summary." (The trial court was not asked to address, and did not address, the impact of its rulings upon what evidence Hughes and Morley would later be allowed to offer at trial.)

Steiny's application to this court for an extraordinary writ overturning the protective order was summarily denied.

For reasons the parties do not explain, the special master never prepared or provided the ordered spreadsheet. Hughes eventually tendered a heavily redacted spreadsheet of its own preparation. Neither Hughes nor Morley ever provided the detailed information called for in the document requests and interrogatories.

When the cases proceeded to trial, Steiny moved to exclude Morley's evidence of damages, arguing that such exclusion was the appropriate and

necessary remedy for Morley's invocation of privilege to prevent disclosure of damages evidence. In response, Morley said it intended to present *only*: evidence of the sum actually paid to Hughes in settlement, plus evidence that this approximated the amount of damages *claimed* by Hughes against Morley. Morley argued that the settlement was presumed reasonable, and that it was Steiny's burden to disprove this, citing *Peter Culley & Associates v. Superior Court* (1992) 10 Cal.App.4th 1484, 1497 [13 Cal.Rptr.2d 624].

The trial court granted Steiny's motion and excluded the evidence, noting that the protective order obtained by Hughes and Morley had rendered Steiny unable to challenge the amount or reasonableness of the Hughes-Morley settlement.

The parties then entered a "stipulation of facts re entry of judgment" which recited that Morley could not proceed with its case in light of exclusion of its damage evidence; that the court could therefore enter judgment in Steiny's favor dismissing Morley's claims and awarding Steiny the sum due from Morley on the subcontract; that Morley reserved its right to appeal the ruling excluding the settlement sum evidence; and that "[w]hether Steiny is entitled to prejudgment interest . . . shall be determined by the court subsequent to the entry of judgment." The court entered judgment the same day.

Steiny requested an award of attorney fees, costs, and prejudgment interest. It cited, inter alia, paragraph 19 of the subcontract, which required Steiny to pay Morley's costs of "effecting compliance" with the contract, including attorney fees, and argued this clause was made reciprocal by Civil Code section 1717. Steiny presented its counsel's declaration attesting to the number of hours billed, the hourly rates, and the tasks performed. Supporting billing records were not supplied. Steiny also claimed as costs fees paid to its litigation experts. The trial court awarded Steiny its attorney fees, expert witness fees, and prejudgment interest.

Trial went forward on Steiny's claim against California for supplying defective equipment. The evidence concerning the contract included Steiny's purchase order to California, and California's invoice to Steiny. These contained diametrically opposing provisions concerning warranties. The purchase order specified express warranties of merchantability and fitness for particular use, which were stated to be "in addition to any and all warranties of Seller arising by operation of law . . . nothing contained herein shall be construed as limiting or restricting such warranties." The invoice expressly disclaimed all express and implied warranties. The invoice

recited that any inconsistent terms contained in Steiny's order were not binding, and that Steiny's acceptance of the goods would constitute acceptance of California's terms. Neither party signed the other party's document. The evidence was in conflict as to which party's document was first tendered to the other.

Steiny presented expert evidence that the circuit breaker supplied by California was defective; California presented expert evidence that errors in installation caused the failure.

Steiny requested the trial court to instruct the jury on the rules in California Uniform Commercial Code section 2207, which deals with conflicting contract forms, and also to instruct on the implied warranties of merchantability and fitness. The trial court declined these requests. The court instructed that the jury must find "mutual consent" in order to conclude that there was a contract; that "consent is not mutual unless the parties all agreed upon the same thing and the same sense"; and that conduct alone is not effective as an expression of consent.

The jury returned a general verdict in favor of California.

Morley and Hughes appeal from the judgments in favor of Steiny, and Morley appeals the award of attorney fees, expert fees, and costs. Steiny appeals from the judgment in favor of California.

## DISCUSSION

*Morley appeal.*

█ Morley contends the trial court erred in excluding its damage evidence (the settlement with Hughes).

In general, our civil justice system seeks truth by allowing the parties to lay all relevant evidence before the judge or jury. Thus, a party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action. (Code Civ. Proc., § 2017.) Except as otherwise provided by statute, all relevant evidence is admissible at trial. (Evid. Code, § 351.)

Privileges are an exception to the general rule of access to all relevant evidence. Privileges authorize withholding of relevant evidence to further some policy other than exposing truth, for example, to foster and enhance the attorney-client or doctor-patient relationship.

When a party asserting a claim invokes privilege to withhold crucial evidence, the policy favoring full disclosure of relevant evidence conflicts with the policy underlying the privilege. Courts have resolved this conflict by holding that the proponent of the claim must give up the privilege in order to pursue the claim. Where privileged information goes to the heart of the claim, fundamental fairness requires that it be disclosed for the litigation to proceed. (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 1999) ¶ 8:1930, p. 8E-21; *Merritt v. Superior Court* (1970) 9 Cal.App.3d 721, 730 [88 Cal.Rptr. 337] [plaintiff whose claim depended on his attorney's state of mind could not proceed and yet invoke the attorney-client privilege]; *Fremont Indemnity Co. v. Superior Court* (1982) 137 Cal.App.3d 554, 560 [187 Cal.Rptr. 137] [court could order dismissal of suit against fire insurance company where plaintiff invoked Fifth Amendment privilege to preclude questioning as to whether he started fire].)

These principles in the present case justified the trial court's order in limine barring Morley from offering damage evidence. Morley's and Hughes's invocation of the trade secrets privilege, and the blanket protective order they obtained based on the privilege, prevented Steiny from examining key evidence needed to test the bona fides of Morley's settlement with Hughes.

Business interruption damages of the kind Hughes claimed for the power outage are difficult to quantify. Further, there were several disincentives for Morley to negotiate hard with Hughes. For one, Morley had a large contract with Hughes, and thus a motive to keep Hughes happy. For another, Morley expected Steiny, California, or Cutler ultimately to pay the freight, and in fact withheld from Steiny almost all the money Morley agreed to pay Hughes. Under these circumstances Steiny was not required to accept the sum agreed upon by Hughes and Morley without examination or challenge; rather, Steiny was entitled to examine the evidence and attempt to make the case that the settlement was too generous.

Hughes and Morley had the right to stand on the privilege, but not the right to proceed with their claim while at the same time insisting on withholding key evidence from their adversary. Further, they could have agreed to a more typical and less extreme protective order which allowed Steiny and its counsel to obtain the needed information while strictly confining its use. The trial court did not err in holding that they forfeited the right to proceed with their claim by instead insisting on absolute withholding of all the privileged information.

Hughes and Morley argue that the trial court in effect improperly granted a terminating sanction for a misuse of the discovery process. Such a sanction

may be imposed for one of several enumerated abuses of discovery. (Code Civ. Proc., § 2023, subd. (a).) Hughes and Morley argue that they neither misused the discovery process, nor violated a discovery order, hence no terminating sanction was warranted.

It is true that Hughes and Morley did not misuse a discovery procedure or violate a discovery order. But the trial court did not purport to find that there had been a discovery abuse or violation of a discovery order. Rather, the court excluded the damage evidence, as explained above, because Morley's assertion of the privilege, though proper, deprived Steiny of the ability to test the reasonableness of the Hughes-Morley settlement.

Morley also argues that under *Peter Culley & Associates v. Superior Court, supra,* 10 Cal.App.4th at page 1497, Morley needed only to offer proof of the amount paid in settlement and the burden was upon Steiny to disprove the reasonableness of the settlement. But the trial court's order was correct regardless of which party had the burden of proof. Assuming, without deciding, that Steiny had the burden to prove the Hughes-Morley settlement was unreasonable, Steiny nonetheless was entitled to obtain from Hughes or Morley the information needed to evaluate and attempt to challenge the settlement.

■ Morley also contends that Steiny was not entitled to recover attorney fees. But the subcontract, paragraph 19, authorized Morley to recover from Steiny "costs of effecting compliance with the contract" and specifically named attorneys fees as recoverable cost. Civil Code section 1717 made this provision reciprocal by operation of law.

Morley complains that Steiny failed to supply billing statements to support its attorney's declaration seeking attorneys fees. But there is no legal requirement that such statements be offered in evidence. An attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records. (*Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559 [227 Cal.Rptr. 354].) The trial court did not err in crediting the attorney declaration here, which included detailed evidence of hours spent, tasks concluded, and billing rates.

■ Morley also asserts that expert fees were improperly awarded. Code of Civil Procedure section 1033.5, subdivision (b)(1), specifies that witness fees of experts, not ordered by the court, are not recoverable as costs "except when expressly authorized by law." Steiny cites no provision of law which supports the award here, nor do we find one. Steiny relies on the contract, but the contract does not expressly mention expert witness fees, and even if

it did, this would not supply the express authorization by law required by Code of Civil Procedure section 1033.5, subdivision (b)(1). (*Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1154 [82 Cal.Rptr.2d 143]; *Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1621-1627 [28 Cal.Rptr.2d 878].) The trial court erred in awarding expert witness fees.

Finally, Morley asserts that Steiny's failure to seek prejudgment interest *prior* to the entry of the stipulated judgment defeats the claim for interest, citing *North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 830-831 [76 Cal.Rptr.2d 743] (prejudgment interest may not be sought by inserting amount at last minute in cost award, without notice to other party, and after verdict and postjudgment motions for new trial and to tax costs had been heard and decided).

Civil Code section 3287 creates the right to prejudgment interest on damages. As the court in *North Oakland* noted, neither section 3287, nor any other rule, specifies *when* prejudgment interest must be sought. The court concluded that there must be some deadline, and that such a request made after judgment and after completion of postjudgment proceedings, without notice to the adversary, is too late.

The present case bears no resemblance to the extreme facts in *North Oakland.* Steiny requested interest in its complaint, and Morley stipulated before judgment was entered that Steiny's request for interest would be adjudicated in a postjudgment hearing.

The award of postjudgment interest was proper.

*Steiny appeal.*

■    Steiny contends the trial court erred in refusing to instruct the jury about California Uniform Commercial Code section 2207, and about the implied-in-law warranties of merchantability and fitness for a particular use.

California Uniform Commercial Code section 2207 addresses the problem which arises when a purported acceptance of an offer is accompanied by terms additional to or different from those in the offer. It specifies that the new terms do not become part of a contract if they materially alter the offer.

(Cal. U. Com. Code, § 2207, subd. (2)(a).) It further provides that a contract may arise, notwithstanding the materially altered terms, if the parties' conduct "recognizes the existence of a contract." (Cal. U. Com. Code, § 2207, subd. (3).) In such a case the contract consists of the terms on which the conflicting writings agree, supplemented by the other applicable provisions of the code.

California Uniform Commercial Code section 2207 squarely applied in this case. Steiny's purchase order and California's invoice contained materially differing terms: the former imposed broad warranty coverage; the latter disclaimed all warranties. The parties nonetheless by their conduct manifested an agreement: California supplied, and Steiny accepted, the switchboard gear. Hence, under California Uniform Commercial Code section 2207, subdivision (3), there was a contract, which consisted of the terms on which the two writings agreed, supplemented by the provisions of the code. The code imposes warranties of merchantability by operation of law absent contractual modification or disclaimer. (Cal. U. Com. Code, § 2314.) It also imposes a warranty of fitness, absent contractual exclusion or modification, if the seller knows the buyer's purpose for the goods and knows that the buyer is relying on the seller's judgment to furnish suitable goods. If California did not wish to supply the equipment on the terms specified in Steiny's invoice, California was free to withhold the equipment unless and until Steiny agreed to California's terms.

The evidence in the case warranted giving the requested instructions under California Uniform Commercial Code section 2207, and it was error to refuse them.

Further, the error was prejudicial. Instructional error is sufficiently harmful to warrant reversal if it is reasonably probable that the error affected the verdict. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298].) The jury here was deprived of knowledge of the correct rule of law, which strongly pointed to formation of a contract, with at least an implied warranty of merchantability included. They were instead given instructions that virtually directed a finding that there was no contract: that consent must be mutual, must involve agreement by all parties on all things, and cannot be inferred from conduct.

### DISPOSITION

The judgment against Steiny and Company, Inc., and in favor of California Electric Supply Company, Inc., is reversed, and Steiny's claim against

California is remanded for trial. The judgments against Morley Construction Company and Hughes Aircraft Company and in favor of Steiny are affirmed. The postjudgment order requiring Morley to pay fees and costs to Steiny is modified to strike the expert witness fees, and as modified is affirmed.

Steiny is awarded costs on appeal against California, Morley and Hughes.

Johnson, Acting P. J., and Woods, J., concurred.