AKH COMPANY, INC., Plaintiff,

v.

UNIVERSAL UNDERWRITERS
INSURANCE COMPANY,
Defendant.

No. 13–2003–JAR–KGG.

United States District Court,
D. Kansas.

Signed June 18, 2014.

Order On Reconsideration in
Part Aug. 20, 2014.

Brian E. Sobczyk, Scott C. Hecht, Stinson Leonard Street LLP, Kansas City, MO, Craig Aronson, Vatche Chorbajian, Law Offices of Vatche Chorbajian, APC, San Diego, CA, for Plaintiff.

J. Randolph Evans, Shari L. Klevens, McKenna Long & Aldridge LLP, Washington, DC, Karen L. Bizzini, Robert A. Sanders, Sinnott, Puebla, Campagne & Curet, Los Angeles, CA, Patrick A. Bousquet, Brown & James, PC, St. Louis, MO, David R. Buchanan, Derek H. MacKay, Brown & James, PC, Kansas City, MO, for Defendant.

### ORDER ON PLAINTIFF'S MOTION TO COMPEL

KENNETH G. GALE, United States Magistrate Judge.

Now before the Court is Plaintiff's "Motion to Compel Production of Documents." (Doc.

117.) For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** this motion.

## BACKGROUND

The above-captioned matter is a declaratory judgment action based on a dispute concerning insurance coverage and the settlement of a trademark dispute involving Plaintiff and a third party. (*See* Doc. 1; Doc. 75, sealed, at 5–6 (underlying litigation hereinafter referred to as "RT litigation" or "RT case").) The facts of the case were summarized by District Court in its Order (Doc. 75, sealed) denying Plaintiff's Motion for Partial Summary Judgment (Doc. 7) and Defendant's Motion to Bifurcate (Doc. 68). The Court incorporates that factual summary herein. (*See* Doc. 75, sealed, at 4–7.)

The present motion involves Plaintiffs request for an order compelling Defendant to produce documents responsive to certain of Plaintiff's second, third, and fourth sets of Requests for Production of Documents.[1] Plaintiff contends Defendant's responses to the second and third sets were untimely (resulting in a waiver of any objections) and incomplete. Plaintiff further contends that no responses were given to the fourth set. (Doc. 118, at 8.) Plaintiff also disputes certain objections raised by Defendant in response to the discovery requests. Each issue will be addressed in turn.

## DISCUSSION

### A. Timeliness.

Plaintiff contends that Defendant waived its objections to Plaintiff's second and third document requests by failing to respond within the thirty days allotted by Fed. R.Civ.P. 34. (Doc. 118, at 11–13.) Plaintiff continues that although Defendant sought an extension to respond to the second set, the responses were still late and that no extension was requested or received for the third set. (*Id.*) Plaintiff also contends that Defendant did not respond to Plaintiffs Fourth

Requests in a timely fashion, thus waiving all objections. (Doc. 118, at 36–37.) Defendant responds that its discovery responses and privilege log were timed according to agreements between the parties. Thus, the responses were not "late" and no objections have been waived. (Doc. 129, at 15–17.) These issues are not addressed in Plaintiff's reply. (Doc. 135.) As such, the Court will accept Defendant's representations as true and decide the issues between the parties on the merits.

### B. Standards for Discovery.

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." As such, the requested information must be both nonprivileged and relevant to be discoverable.

" 'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." *Teichgraeber v. Memorial Union Corp. of Emporia State University,* 932 F.Supp. 1263, 1265 (D.Kan.1996) (internal citation omitted). "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecommunications Corp.,* 137 F.R.D. 25, 27 (D.Kan. 1991). Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden By and Through Victor v. Connaught Lab.,* 137 F.R.D. 325, 329 (D.Kan. 1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).

The scope of discovery is broad, but not unlimited. If the proponent has failed to

---

1. Defendant asserts that it has produced all documents responsive to Plaintiff's Second Requests Nos. 20, 21, and 47 and Third Requests Nos. 31, 80, 82, 83, 86, 87, 93, 104, and 105. (Doc. 129, at 32, 42–44.) Plaintiff does not contradict these assertions in its reply brief. (*See* Doc. 135.) As such, the Court considers these issues resolved.

specify how the information is relevant, the Court will not require the respondent to produce the evidence. *Gheesling v. Chater*, 162 F.R.D. 649 (D.Kan.1995). In this context, the Court will address the various objections raised document requests at issue.

## C. Specific Requests.

### 1. Claims file.

Plaintiff argues that it "needs the entire claims file to establish its rights" but that Defendant has failed to produce it in its entirety "relying on unsupported claims of privilege." (Doc. 118, at 14.) Plaintiff continues that Defendant has "withheld thousands of pages of claims file documents based on claims of privilege and has provided other documents with extensive redactions." (*Id.*) Plaintiff argues that these documents are not privileged because "decisions on claims handling are part of the insurance company's everyday business." (*Id.*) Plaintiff also argues that "communications explaining, justifying and acting on decisions about defense and settlement are not only highly relevant to proving [Plaintiff's] claims of a duty to defend and settle, but are essential to claims of bad faith." [2] (*Id.*, at 15.) "There is no substitute and no alternative," according to Plaintiff. (*Id.*)

Defendant responds that it "did not withhold any documents that pertained to the ordinary course of handling [Plaintiff's] claim." (Doc. 129, at 17–18.) Defendant argues that it a) "withheld a small volume of documents" encompassing communications between its claim professional and in-house counsel "providing legal advice about coverage issues" and b) documents created within 2 months of the filing of the present action "concern[ing] communications involving legal advice about settlement of the RT Lawsuit and responding to this coverage action." (*Id.*, at 18.)

 The crux of the issue between the parties relates to the point at which Defendant was reasonably anticipating litigation, thus creating a privilege for the documents at issue based on the work product doctrine.

The work product doctrine is contained in Fed.R.Civ.P. 26(b)(3)(A) and

> protects from discovery all documents and materials prepared by an attorney, a party, or an agent of either, in anticipation of litigation. To establish work product protection, the party seeking to invoke work product immunity must show that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party. The party invoking work product immunity for a document has the burden to establish all the elements of the immunity, and a mere allegation that the work product privilege applies is insufficient to prove applicability.

*McNabb v. City of Overland Park*, No. 12–2331–CM–TJJ, 2014 WL 1152958, at *8 (D.Kan. March 21, 2014) (citations omitted). Although certain actions by an adverse party, such as submitting a reservation of rights letter, might be considered precursors to litigation, "the work product doctrine requires more than a mere possibility of litigation." *Pouncil v. Branch Law Firm*, No. 10–1314–JTM–DJW, 2011 WL 5025033, *4 (D.Kan. Oct. 21, 2011) (holding that the filing of a complaint with the Disciplinary Board "might reasonably be expected to be the precursor to a [legal] malpractice claim," it did not create a reasonable anticipation of litigation).

 Courts have routinely applied a rebuttable presumption "that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made" as to that claim. *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 399 (N.D.Okla.2010).

> Fed.R.Civ.P. 26(b)(3) requires that a document or thing produced or used by an insurer to evaluate an insured's claim in order to arrive at a claims decision in the ordinary and regular course of business is not work product regardless of the fact that it was produced after litigation was

---

**2.** As discussed below, Plaintiff incorrectly characterizes its "breach of the covenant of good

faith and fair dealing," which is a contract claim, as one for "bad faith." This is incorrect.

reasonably anticipated. It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product. Likewise, anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim. The converse, of course, is presumed for documents produced after claims denial. To overcome these presumptions, the insurer must demonstrate, by specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision.

*Id.* (quoting *Harper v. Auto–Owners Ins. Co.,* 138 F.R.D. 655, 663–664 (S.D.Ind.1991).) "[T]he question of whether insurer and adjuster documents were created in anticipation of litigation depends on whether the party seeking protection can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation." *U.S. Fire Ins. Co. v. Bunge North America, Inc.,* 247 F.R.D. 656, 659 (D.Kan.2007).

■ Based on arguments and representations of the parties (*see e.g.,* Doc. 129, at 18–19), and considering the burden is on Defendant to establish the existence of the privilege, the Court finds that the date Defendant would have reasonably anticipated litigation was when Defendant made the decision to send the December 28, 2012, letter regarding the settlement check from the RT litigation wherein Defendant

repeated that the payment was subject to a reservation of its right to file a declaratory relief action against AKH to seek reimbursement of the settlement contribution, as well as a reservation of its right to seek reimbursement and defense fees and costs it paid for claims never potentially covered and prejudgment interest.

(Doc. 75, sealed, at 7.) Any information withheld on the basis of attorney-client privilege or the work product doctrine after this time must be produced.

### 2. Electronically Stored Information ("ESI").

■ Prior to Defendant responding to Plaintiff's second set of discovery requests, Plaintiff realized that "the number of documents in this case would be extensive, that electronic copies would be the most economically efficient, that native format would allow [Plaintiff] to properly search for and organize documents, and that of *all* of [Defendant's documents were stored electronically." (Doc. 118, at 25.) Plaintiff thus asked for the documents to be produced in native electronic format. Even so, according to Plaintiff, Defendant "refused to produce documents in any form but paper and proceeded to deliver thousands of pages of paper contrary to [Plaintiff's] request for electronic versions of the documents." (*Id.*) Although Defendant ultimately produced documents in "a few very large PDF files," Plaintiff contends that the documents "were not produced in the form maintained by [Defendant] or in any reasonably usable form." (*Id.,* at 26.) Specifically, Plaintiff contends that "it cannot search across multiple PDF"s [sic] at once and organize individual documents into relevant categories or into relevant witness files." (*Id.*)

Requests for Production of Documents relating to electronically stored information are governed by Fed.R.Civ.P. 34(b)(2)(D) and (E), which state:

(D) *Responding to a Request for Production of Electronically Stored Information.* The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form—or if no form was specified in the request—the party must state the form or forms it intends to use.

(E) *Producing the Documents or Electronically Stored Information.* **Unless otherwise stipulated or ordered by the court,** these procedures apply to producing documents or electronically stored information:

(i) **A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;**

(ii) **If a request does not specify a form** for producing electronically stored information, **a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms;** and

(iii) A party need not produce the same electronically stored information in more than one form.

(Emphasis added.)

The Court acknowledges the statement in the Report of Parties' Planning Conference. For purposes of this motion, the Court also acknowledges that Plaintiff may have accepted or previously requested documents in a certain format. Even so, "Rule 34(b) allows, but does not require, the requesting party to specify the form in which it is requesting electronic data." STEVEN BAICKER-MCKEE ET AL., FEDERAL CIVIL RULES HANDBOOK 887 (2013 ed.). There is nothing in the rule that prohibits a party from changing the requested format from one set of discovery request to the next.

The rule does, however, allow the responding party to object to the requested form. The Court finds that Defendant has adequately explained why the documents were not produced in their native form. The Court considers the proprietary nature of certain software used by Defendant, Defendant's right to withhold privileged information, the need to limit the production of information regarding unrelated policyholders that is irrelevant to this case, and the added costs of re-producing information already submitted to Plaintiff in converted PDF format to be valid reasons not to require Defendant to re-produce the information at issue. (*See* Doc. 129, at 37–39.) Defendant expended the time, effort, and expense to produce documents in PDF form as initially requested by Plaintiff. Absent a need for metadata that potentially would be attached to the native format of this information—a need which Plaintiff has not es-

tablished—the Court will not require Defendant to re-produce the information. This portion of Plaintiff's motion is **DENIED.**

### 3. "Similar" Claims Files.

■ Requests Nos. 41–45 and 47–79 of Plaintiff's third set of document requests seek information regarding various complaints against Defendant, including those regarding delayed payments, the duty to defend, the refusal to provide independent counsel, and reimbursement for defense costs. (*See* Doc. 119–5.) Plaintiff contends that the "factual scenarios" posed by these more than 30 requests all "involv[e] issues in the RT case." (Doc. 118, at 30.)

Defendant describes the subject matter of these requests as "broad and far-reaching. . . ." (Doc. 129, at 26.) Defendant states that Plaintiff has asserted three causes of action (the breach of the duty to defend, the breach of the duty to settle, and the breach of the covenant of good faith and fair dealing). (*Id.*) As such, Defendant argues that the discovery requests at issue do "not seek discovery of 'similar claims files,' [and] they do not even seek discovery of other matters [Defendant] has handled for other policyholders containing like allegations." (*Id.*) Defendant argues that the requests have been propounded "for an improper purpose, such as to harass or cause [Defendant] to incur unnecessary costs and burdens, which is forbidden under Federal Rule of Civil Procedure 26(c)." *Id.*

The Court will not surmise as to the underlying motivation for Plaintiff propounding document requests on these extensive topics. The Court will, however, opine that the effect of requiring Defendant to respond would be to subject it to undue burden in light of topics which, at best, have limited evidentiary value in this case given the broadly worded nature of the information requested.

Further, Plaintiff mischaracterizes the substance of Count III of its Complaint. The cause of action has been plead as one seeking declaratory relief for the "breach of the covenant of good faith and fair dealing." (Doc. 1, at 23.) Plaintiff's motion, however, continually refers to this as a claim for "bad

faith," as if the two are interchangeable. That is not the case.

The duty of good faith and fair dealing is not a recognized, independent tort cause of action. Rather, the duty "is implied in a contract, and conduct departing from that duty is a breach of a contractual obligation." *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154, 1167 (D.Kan. 1990) (citing *Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792 (1987).) *See also Ritchie Enterprises v. Honeywell Bull, Inc.*, 730 F.Supp. 1041, 1052 (D.Kan.1990); *Wayman v. Amoco Oil Co.*, 923 F.Supp. 1322, 1359 (D.Kan.1996). In the context of a breach of contract claim, the good (or bad) faith of a party may be irrelevant. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 974, 298 P.3d 250 (2013). "A breach is a breach is a breach, even if it occurs with the best of intentions." In other words, the issue is whether or not the contract was breached—regardless of the motivation of the party allegedly in breach. If the factfinder determines that a breach occurred, the underlying motives of the breaching party "will not matter." *Id.* As such, the general information sought in Requests Nos. 41–45 and 47–79, regarding whether Defendant has breached its duties under other contracts (or has been the subject of such complaints), is irrelevant as to whether or not Defendant breached the specific contract at issue.

Finally, even if such information were to be considered relevant, the requests, as written, are facially over broad. Requests Nos. 41–44 generally seek information regarding complaints that Defendant "breached the implied covenant of good faith and fair dealing, acted negligently, committed fraud, misrepresented its duties, breached its fiduciary duties, committed bad faith, breached any statutory duties or violated any statutes or regulations." (Doc. 119–5, at 8–9.) The requests make no effort to limit such com-plaints to situations factually similar as those alleged in the present case.

The same lack of specificity is true for Request No. 45 (complaints that Defendant "breached any statutory duties" of any kind), No. 47–52 (complaints about Defendant's claims handling[3] and investigation of any unspecified types of claims), Nos. 53–54 (complaints about delays in payment generally regarding unspecified types of claim), Nos. 55–56 (complaints about the determination of whether Defendant owed a duty to defend on any type of unspecified claim), Nos. 57–58 (complaints about how long it took Defendant to pay defense costs after a court determined a party was owed a defense on any type of unspecified claim), Nos. 59–60, 71–72, 75–78 (complaints about Defendant's refusal to pay, apportionment of, or request/threat for reimbursement of, defenses costs on any unspecified type of claim), Nos. 61–64 (complaints about the assignment or qualifications of counsel in any unspecified type of case), Nos. 65–66 (Defendant's refusal to provide independent counsel in any unspecified type of case), Nos. 67–68 (Defendant's refusal to pay defense costs on any unspecified types of claims that were potentially not covered by any unspecified policy), Nos. 69–70 (the refusal to pay costs relating to any unspecified claims asserted by an insured against a third party), and Nos. 73–74 (complaints that Defendant misrepresented its duties under any unspecified type of policy). Request No. 79 seeks Defendant's "logs, list, or computer record of complaints" regarding all of the aforementioned litany of issues relating in general to any unspecified type of claim.

The Court finds these generalized discovery requests, for which Plaintiff has failed to provide a sufficient, substantive limitation, to be facially over broad as well as irrelevant. Plaintiff's motion is **DENIED** in regard to these requests.

3. The discovery requests define "claims handling" as "everything done by UNIVERSAL in response to UNIVERSAL's receipt of a claim by an insured seeking a defense or any coverage in a third party lawsuit, including but not limited to, processing, handling, investigating, review-ing, approving, defending, paying, settling or denying claims or requests for defense." (Doc. 119–5, at 3.) The definition—and corresponding discovery requests—provide no limitation as to the type of substance of cases involved.

#### 4. Personnel files.

██ Plaintiff also seeks "the complete personnel files for Jena Palmer, Stephanie Cole, and any other claims handling or claims handling supervising personnel involved in the AKH claim." (Doc. 118, at 32.) Defendant objects that these requests seek "personal, confidential, private information...." (Doc. 129, at 29.) As this Court has held repeatedly, "confidential" does not equate to "nondiscoverable" or privileged. *Williams v. Evogen, Inc.*, No. 12–2620–JWL–KGG, 2013 WL 3773840, at *3 (July 17, 2013). *See also Kendall State Bank v. West Point Underwriters, LLC*, No. 10–2319–JTM–KGG, 2013 WL 593957, at *2 (D.Kan. Feb. 15, 2013); *McCloud v. Board of Geary County Commis.*, 2008 WL 1743444, at *4 (D.Kan. April 11, 2008) (holding that even assuming certain records are " 'private' or confidential, this does not mean the records are privileged and/ or nondiscoverable").

Plaintiff is correct that courts have found personnel files of claims handlers to be discoverable in cases alleging the bad faith handling of an insurance claim. *Waters v. Continental General Ins. Co.*, No. 07–282–TCK–FHM, 2008 WL 2510039, at *1 (N.D.Okla. June 18, 2008). The Court will limit this to "information from the personnel files which pertains to the adjusters' background, qualifications, training and job performance" and exclude "sensitive personal or medical information" regarding these individuals. *Id.* The production will be limited to "only ... those adjusters who actually handled some aspect of Plaintiff's claim. Therefore, Defendant need not produce the foregoing information for the supervisors identified unless those supervisors participated in adjusting the claim in some manner." *Id.*

These parameters shall also apply to Request No. 36, which seeks documents regarding "any disciplinary action, reprimands, positive reports, praise, or commendation of any of Defendant's] personnel or OUTSIDE VENDORS who performed work on the CLAIM." (Doc. 119–5, at 7 (capitalization in original).) Further, such information, whether it be disciplinary or commendatory in nature, shall be limited to issues relating to claims handling and only by such individuals who actually participated in adjusting the claim at issue. This portion of Plaintiff's motion is, therefore, **GRANTED in part** and **DENIED in part.**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Production of Documents (Doc. 117) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

**IT IS SO ORDERED.**

### *ORDER GRANTING IN PART DEFENDANT'S MOTION FOR RECONSIDERATION*

Before the Court is Defendant's motion for reconsideration (Doc. 160) of this Court's Order (Doc. 152) granting in part and denying in part Plaintiff's Motion to Compel (Doc. 117). Specifically, Defendant challenges the Court's rejection of its objection to the production of portions of its claims file as within the attorney client privilege.

██ "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F.Supp. 1482, 1483 (D.Kan. 1994), *aff'd*, 43 F.3d 1484 (Table) (10th Cir. 1994). A motion for reconsideration must be based on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. D. Kan. Rule 7.3. Because a portion of the previous ruling (Doc. 152) constitutes clear error, the motion is **GRANTED** in part.

Defendant-insurer claims that Plaintiff-insured induced it to pay a settlement on behalf of Plaintiff in defense of a lawsuit by misleading Defendant or concealing material facts from Defendant. In discovery, Plaintiff requested Defendant's entire claims file on the previous litigation. Defendant objected that some of those documents are privileged under the work-product and attorney-client privileges.

In its previous ruling, this Court ruled that the work-product privilege did not attach to documents created before the date Defendant reasonably anticipated litigation, which

the Court found to be December 28, 2012. The Court ordered the production of documents created before that date.[1] As it relates to claims of work-product privilege only, this ruling is not challenged in the present motion and remains in effect.

Defendant also objected that some documents are protected under the attorney-client privilege. This Court, following language in a case from another jurisdiction,[2] evaluated that claim under the same principals and found that the privilege did not attach before the date litigation could be reasonably anticipated. This was error. Although language supporting that rationale may be found in the case cited,[3] the authorities cited in that opinion do not generally support that approach.[4] Additionally in that case, our sister court ultimately relied upon an analysis of whether the attorneys for whom the privilege was claimed were acting in a legal capacity.

The work product privilege is created by Fed.R.Civ.P. 26. The attorney client privilege in a case based on diversity jurisdiction is determined by state law. Fed.R.Evid. 501. Although the analysis of those issues may factually trod the same ground, the questions are different. The Court must determine whether the communications qualify as privileged under the state standard, and whether any exception exists.

■■■ The party asserting the attorney-client privilege bears the burden to establish its applicability. *Kannaday v. Ball,* 292 F.R.D. 640, 644 (D.Kan.2013). "The privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" *Marten v. Yellow Freight Sys., Inc.,* No. 96–2013–GTV, 1998 WL 13244, at *6 (D.Kan. Jan.6, 1998) (quoting *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D.Kan.1995)).

The communications at issue in this case were to or from three different attorneys (1) Stephanie Cole, an attorney acting as a claims professional, (2) an unnamed in-house counsel, and (3) outside counsel retained to advise Defendant. An additional distinction may be made concerning the topics of asserted legal advice. Those may include (1) issues concerning coverage and (2) advice relating to the settlement that is the subject of Defendant's fraud claim.

■■■ Beginning with communications to or from Ms. Cole, the Court does not perceive Defendant to claim that those are privileged unless they involve communication between her and either other in-house counsel or outside counsel. For purposes of this motion, the Court agrees that Ms. Cole did not have to be an attorney to perform her job duties handling the underlying claim. As such, to the extent such documents have not been produced, the Court orders production of all communications involving Ms. Cole and Universal's personnel other than other attorneys.

■■■ Additionally, relating to communications with outside counsel by Ms. Cole or other agents of Defendant, Plaintiff is not claiming that communications relating to coverage issues should be produced. The Court sees no reason in this case to distinguish such advice from outside counsel from advice from in-house counsel. Therefore, communications between Ms. Cole or other agents of Defendant with either outside counsel or in-house counsel concerning coverage are privileged and need not be produced.

■■■ The real dispute before the Court concerns communications between Ms. Cole or other Defendant personnel with either in-house or outside counsel concerning entering into the settlement that is the subject of Defendant's fraud claim. Plaintiff does not dispute that such communications were ini-

---

1. The Order erroneously states that documents produced after that date should be produced. The word should have been "before." This issue was previously addressed by the Court with the parties.

2. *Lindley v. Life Investors Ins. Co. of America,* 267 F.R.D. 382 (N.D.Okla.2010).

3. 267 F.R.D. at 399.

4. The Kansas case cited by the Oklahoma court in support of that proposition is a ruling only on the work-product privilege. *U.S. Fire Ins. Co. v. Bunge North America, Inc.,* 247 F.R.D. 656, 659 (D.Kan.2007).

tially privileged, but claims that Defendant has waived the privilege by bringing the present fraud claim. Plaintiff argues that Defendant "has put in issue what it knew and when regarding the settlement and the reasons for paying the settlement" and that when "an insurer puts at issue information that is established between it and its counsel, any attorney-client privilege should to that extent be deemed to have been impliedly waived." (Doc. 175 at page 7).

In support of its position, Plaintiff urges application of the rule followed in California which provides that where "privileged information goes to the heart of the claim, fundamental fairness requires that it be disclosed for the litigation to proceed." *Steiny & Co. v. Cal. Elec. Supply Co.,* 79 Cal.App.4th 285, 292, 93 Cal.Rptr.2d 920 (2000). The California rule is not, however, applicable here. No doubt Defendant's conversations with its attorneys concerning whether to pay the settlement could reveal information relevant to their fraud claim. But relevance is not the test. To apply a waiver of the privilege, Defendant must have placed the communications themselves at issue.

The case relied upon by Plaintiff illustrates this distinction. In *Merritt v. Superior Court,* 9 Cal.App.3rd 721, 88 Cal.Rptr. 337 (1970), the client relied upon its attorney's testimony in bringing its claim. The central claim was that the attorney had been confused by defendant. However, "there is no waiver of the attorney-client privilege where the substance of the protected communication is not itself tendered in issue, but instead simply represents one of several forms of indirect evidence in the matter." *Mitchell v. Superior Court,* 37 Cal.3d 591, 606, 208 Cal.Rptr. 886, 691 P.2d 642 (1984). *See also Luna Gaming–San Diego, L.L.C. v. Dorsey & Whitney, L.L.P.,* 06–CV–2804–BTW, 2010 WL 148713 (S.D.Calif.2010). In the present case, Defendant has not "tendered" its communications with its attorneys as part of its claim, and has not, yet, indicated that it intends to rely upon its attorneys' testimony. Thus, the privilege has not been waived.

An unresolved issue in this case is whether Kansas or California law will apply. Howev-

er, the analysis of this issue under Kansas privilege law yields the same result. The waiver only applies when the party claiming the privilege "puts the fact of the communication at issue." *State ex rel. Stovall v. Meneley,* 271 Kan. 355, 22 P.3d 124 (2001) (*citing Hearn v. Rhay,* 68 F.R.D. 574, 579–81 (E.D.Wash.1975)). In the present case, the waiver is not applicable because "the attorney-client communications are merely relevant to claims" rather than "integral" to the claim itself. *Cincinnati Insurance Company v. Serrano,* 11–CV–2075–JAR/KGG, 2011 WL 6304086 (D.Kan.2011).[5]

The Motion for Reconsideration is, therefore, **GRANTED** to the extent that requests for communications between Defendant's personnel, including Ms. Cole, with in-house counsel or outside counsel are privileged and the motion to compel production of those documents is denied. Other communications with Ms. Cole and others must be produced except as protected under the Court's previous order as work product.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Reconsider (Doc. 160) is **GRANTED in part** as more fully set forth herein.

**IT IS SO ORDERED.**

---

5. Of course, Defendant may still cause a waiver of the privilege if, for example, its claim includes an assertion that its in-house or outside counsel were deceived or mislead by Plaintiff's conduct or if it tenders its attorneys' testimony in support of its claim.