**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

STEVEN J. BERNS, an individual
residing in the State of California,

          Plaintiff-Appellant,

v.

SENTRY SELECT INSURANCE
COMPANY, an Illinois corporation,

          Defendant-Appellee.

No.   17-56264

D.C. No.
2:13-cv-01611-DSF-AGR

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted March 6, 2019
Pasadena, California

Before: KLEINFELD, GILMAN,[**] and NGUYEN, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Plaintiff Steven J. Berns appeals the district court's grant of summary judgment in favor of Sentry Select Insurance Company on the issue of Berns's remaining cause of action for bad faith breach of the duty to defend. We AFFIRM.

Berns was insured under an insurance policy issued by Sentry. The insurance policy stated that Sentry would defend Berns for an "act" of "wrongful termination" or "harassment" committed in the course of his employment, with the exception of any "dishonest, malicious, fraudulent, criminal or intentional 'act.'" On September 1, 2011, Berns's sister Sue Porter sued Berns for wrongful termination and harassment. Berns requested that Sentry defend him, and Sentry denied his tender of defense, reasoning that his acts were "intentional," thus falling within the policy's exclusion for "intentional" acts. Sentry interpreted "intentional" to mean "voluntary and deliberate." Berns sued for breach of contract and bad faith. In 2016, we ruled in favor of Berns on his breach-of-contract claim, holding that "intentional" required "some sort of wrongful conduct, not just any purposeful act." Berns v. Sentry Select Ins. Co., 656 F. App'x 326, 327 (9th Cir. 2016). Sentry then paid Berns his defense fees, which left his bad-faith claim pending. The district court subsequently granted summary judgment in

favor of Sentry on the bad faith claim. We affirm because Berns has not showed that Sentry acted in bad faith.

"To establish a bad faith claim, the insured must show that (1) benefits due under the policy were withheld and (2) the reason for withholding the benefits was unreasonable or without proper cause." Century Sur. Co. v. Polisso, 43 Cal. Rptr. 3d 468, 487 (Ct. App. 2006), as modified on denial of reh'g (June 16, 2006).

In order to constitute "bad faith," there must be more than just an insurer's contractual breach or mistaken judgment. Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 108 Cal. Rptr. 2d 776, 783 (Ct. App. 2001). Berns has shown merely that the insurance company incorrectly denied him policy benefits, not that it acted in bad faith.

Berns had to show that Sentry was guilty of more than a mere "honest mistake, bad judgment or negligence." Id. Because Berns has not shown a "conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby

depriving that party of the benefits of the agreement," id., he has not shown bad faith.

Although an insurer's denial must be reasonable under all the circumstances, here, Sentry did not act unreasonably in interpreting the term "intentional" to mean "voluntary." California law was then mixed as to the definition of "intentional." Some California cases interpreted the term "intentional" broadly. See, e.g., B&E Convalescent Ctr. v. State Comp. Ins. Fund, 9 Cal. Rptr. 2d 894, 907 (Ct. App. 1992) ("It is well established and generally self-evident that the act of terminating an employee is an intentional act."). Some cases interpreted "intentional" as requiring a specific intent to inflict injury. See, e.g., Gonzalez v. Fire Ins. Exch., 184 Cal. Rptr. 3d 394, 410 (Ct. App. 2015) ("[E]ven an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury.'" (quoting Republic Indem. Co. v. Superior Court, 273 Cal. Rptr. 331, 337 (Ct. App. 1990)) (alteration in original)). In light of this uncertainty, Sentry relied on an Eleventh Circuit case interpreting the term "intentional" in the context of an insurance-policy coverage dispute. See Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc., 990 F.2d 598, 604 (11th Cir.

4

1993).  Because bad faith "implies unfair dealing rather than mistaken judgment," Chateau Chamberay, 108 Cal. Rptr. 2d at 783 (quoting Congleton v. Nat'l Union Fire Ins. Co., 234 Cal. Rptr. 218, 222 (Ct. App. 1987)), and the authorities were divided, Sentry is not liable for bad faith.

Although Berns is correct that the district court was bound by our prior holding in this case, our interpretation of the word "intentional" as requiring a wrongful intent has no bearing on whether Sentry, at the time of its coverage denial (which was of course prior to our 2016 decision), acted reasonably in interpreting the word "intentional" as it did.  See Berns, 656 F. App'x at 328.  Sentry could not have known precisely how we would rule on this issue.

Additionally, while Berns takes issue with Sentry's investigation and delay in paying him, he has not shown a "conscious and deliberate act" to frustrate his contractual rights.  See Chateau Chamberay, 108 Cal. Rptr. 2d at 783.  He has shown merely that Sentry waited until a court determined the meaning of "intentional" in his contract to pay him what, as a result of that ruling, it owed.

Lastly, Berns's argument that Sentry acted in bad faith by invoking the attorney-client privilege to protect communications lacks merit. Sentry was not required to provide their privileged communications to him. Although Berns cites cases that he claims show there can be exceptions to the attorney-client privilege when "fairness requires" or a party uses it as a "sword and a shield," the cases that he cites do not apply here because they involve advice-of-counsel defenses, attorney disparagement, and the trade-secrets privilege. For instance, in United States v. Amlani, we held that the defendant waived attorney-client privilege when the defendant made a claim of attorney disparagement. 169 F.3d 1189, 1191 (9th Cir. 1999). In Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc., the defendant waived the advice-of-counsel defense by invoking the attorney-client privilege. 259 F.3d 1186, 1196 (9th Cir. 2001). In Chevron Corp. v. Pennzoil Co., the defendant waived attorney-client privilege by invoking the advice-of-counsel defense. 974 F.2d 1156, 1162 (9th Cir. 1992). Steiny & Co. v. California Electric Supply Co. did not involve the attorney-client privilege. 93 Cal. Rptr. 2d 920 (Ct. App. 2000). Steiny & Co. involved the trade-secrets privilege. See id. In this case, Sentry has not raised any advice-of-counsel defense nor a claim of attorney disparagement. No exception to the attorney-client

privilege applies, and as a result, Sentry did not act in bad faith in asserting the privilege.

For these reasons, we **AFFIRM**.