Filed 2/2/23  Mooney v. Argus Realty Investors CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LORELEI MOONEY, as Trustee, etc., et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>ARGUS REALTY INVESTORS et al.,<br><br>    Defendants and Appellants. | G060440<br><br>(Super. Ct. No. JCCP 4811)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Peter J. Wilson, Judge.  Affirmed.

Tencersherman, Philip C. Tencer and Jessica L. Mulvaney for Defendants and Appellants.

Catanzarite Law Corporation, Kenneth J. Catanzarite, Nicole M Catanzarite-Woodward and Eric V. Anderton for Plaintiffs and Respondents.

Lorelei Mooney as trustee and on behalf of the Herbert and Helen Schweiger Trust, ARI-DFW East & West 9, L.P., Gary Lamm, and James Mieuli (Plaintiffs) filed a lawsuit in 2014 on behalf of themselves and a putative class. The action was dismissed six years later, on January 28, 2021, due to Plaintiffs' failure to bring the action to trial within five years. (Code Civ. Proc., § 583.310.) In a prior opinion, this court recently affirmed the dismissal. (*Mooney v. Argus Realty Investors* (Nov. 29, 2022, G060076) [nonpub. opn.] (*Mooney*).)

After dismissing the lawsuit, the trial court awarded the prevailing parties a total of $100,604.41 in attorney fees and costs. This appeal challenges the court's decision to award less in attorney fees than what was requested. We affirm the court's postjudgment order.

FACTS

We incorporate by reference our detailed summary of the procedural history of this case set forth in *Mooney, supra,* G060076. Relevant to the issues raised in this appeal, Plaintiffs' lawsuit (the Mooney Action) initially named over 20 defendants, but by 2021 all that remained were Argus Realty Investors, L.P., ARI Financial Services, Argus Realty, L.L.C., ARI Commercial Properties, Inc., Richard Gee, Maxwell B. Drever, Timothy E. Snodgrass, William Brian Candler, ARI-DFW, East & West, L.P., ARI-Barrett Office Center, LLC, ARI-Atrium Office Building, LLC, ARI-Powers Ferry Office Park, LLC, ARI Copley Business Center, LLC, ARI-Shoreview Corporate Center, LLC, ARI-Securities Centre One & Two, LLC, and ARI-Meridian Plaza, LLC. For ease of reading, we will refer collectively to these parties as Defendants.

Although the action was initiated in 2014, Defendants did not actively defend themselves in the case until 2019, when they filed a demurrer to the third amended complaint (TAC). Thereafter, Defendants filed several other documents,

2

including a response to a list of facts, an omnibus objection, documents requested by the trial court, and exhibit lists. Defendants filed a demurrer and answer to the fourth amended compliant before filing their motion to dismiss.

After the lawsuit was dismissed, Defendants filed a motion for attorney fees and costs as the prevailing party requesting a total of $197,617.98. Their counsel, Philip C. Tencer, declared Defendants were invoiced $170,338.28 for attorney fees. He expected to invoice an additional two hours ($1,100) for time associated with the motion. He noted Defendants incurred $2,514 in attorney fees that had not yet been invoiced and related to the motion to dismiss and for attorney fees and costs. Counsel itemized $23,665.70 for costs already invoiced plus an additional $2,514 not yet invoiced. Thus, Defendants requested a total of $171,438.28 for attorney fees and $26,179.70 in costs.

Plaintiffs opposed the motion, arguing the claim for over $170,000 in attorney fees was not credible because Defendants copied arguments from other parties appearing earlier in the action. They added Defendants' own work was limited, straightforward, and non-complex. They maintained Defendants' counsel needed to provide evidence of the rates charged, the hours worked, the attorney who did the work, and the types of issues addressed. Plaintiffs stated another reason a more detailed accounting was warranted was because Defendants' briefing admitted the case was one of eight concerning the fraudulent investment scheme and they could have padded their fee request for services rendered in the other cases. And finally, Plaintiffs argued more information about the billing was required because of the need for apportionment. They noted the claims consisted of contract and non-contract claims, and the prevailing parties were not entitled to more than fees incurred on the contract. (Citing *Santisas v. Goodin* (1998) 20 Cal.4th 599, 615.)

The rest of Plaintiffs' arguments related to interpretation of the two contracts containing the attorney fee provisions. Specifically, they asserted neither contract provision obligated all the individual plaintiffs in the lawsuit to pay attorney fees. In addition, they claimed certain parties were not entitled to the requested relief.

Defendants filed a reply that focused on the contract interpretation issues. They argued Plaintiffs "brought breach of contract claims on the PSAS [Purchase Agreement and Escrow Instructions]." "This was the primary, if not exclusive, basis for the allegations in the litigation, including breach of contract." They added, "Plaintiffs also sued for breach of contract on the Property Management Agreement ('PMA')." They concluded, "Plaintiffs cannot now claim that the basis for all of their claims for breach of contract . . . were sufficient to bring the breach of contract claims, yet are now insufficient to support an award of fees."

Defendants also addressed the claim the requested attorney fees were unreasonable. They argued the amount was justified because the trial court designated the case to be a complex matter and it required multiple rounds of amended pleadings and demurrers. Tencer submitted a declaration stating he was lead counsel and charged an hourly rate of between $500 to $550 per hour. He stated the case required multiple demurrers, communications with clients, appearances, production of documents, responses to discovery requests, and propounding of discovery. In a footnote, Defendants stated that if the court required additional evidence, counsel would provide copies of the invoices for in camera review.

On May 6, 2021, the trial court issued a tentative ruling continuing the matter. It explained Defendants had not presented sufficient evidence to support their attorney fee request, "including the tasks performed and the number of hours worked." The court added, "Defendants also failed to provide any or sufficient information to

4

enable the [c]ourt to determine the *possible allocation* of fees and costs between contract and tort claims. (Italics added.) There [was] insufficient information to determine whether the fees requested are reasonable and necessary." The court "permitted" the parties to submit supplemental briefing to address these points.

Defendants' supplemental brief cited case authority holding it was not necessary to provide detailed billing timesheets to support an attorney fee award under the lodestar method. (Citing *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254-255, overruled on other grounds by *Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 269.) They maintained an attorney's testimony as to the number of hours worked, the tasks performed, and the reasonable hourly rate was all that should be required. Defendants submitted new calculations that increased the total amount *billed* to $184,435 and the sum *unbilled* to $6,572.50 (for a new total of $191,007.50). Defendants did not increase their request for costs.

Defendants explained Tencer spent a total of 77.3 hours at a rate of $500 per hour ($38,650), an additional 26.9 hours at a rate of $525 per hour ($14,122.50), and finally 164.50 hours charged at a rate of $550 per hour ($90,475). Thus, he spent 268.7 hours on the case, costing Defendants $143,247.50.

Tencer's declaration offered a lot of details about his billing rate, repeatedly stating he charged Defendants less than what he billed other clients. Tencer recalled he was retained in 2012 by other parties in related matters, when his hourly rate was $500 per hour. In 2015, he started working for Defendants in the instant matter, and he charged them $500 per hour, even though his hourly rate at the time was $550. In the beginning of 2019, he continued charging $500 but his hourly rate was $600. Starting in May 2019, he increased his rate to $525 and then to $550 per hour.

5

He explained in general terms the type of work he performed on the case ranged from reviewing correspondence to outlining issues for demurrers. Rather than specifying the number of hours spent on each task, Tencer organized his declaration into separate paragraphs, each covering large chunks of time during which he performed numerous services. For example, paragraph 9 of his declaration stated that from "April 1, 2019, through January 17, 2020, a total of 80.9 hours was spent in connection with work on this matter" and he personally spent 49.9 on 19 different tasks.

In paragraph 9, Tencer described the nature of the work in general terms as follows: (1) receiving correspondence; (2) analyzing correspondence; (3) responding to correspondence; (4) outlining reply briefs; (5) researching reply briefs; (6) preparing reply briefs; (7) drafting supplemental declarations; (8) communicating with clients regarding declarations and reply; (9) reviewing all filings; (10) preparing for hearing on demurrer to the TAC; (11) preparing for demurrer; (12) appearing at hearing on demurrer; (13) reviewing documents and information related to PPMS and offering documents; (14) drafting responses to delayed discovery facts; (15) finalizing list of documents to provide to the court; (16) reviewing the final compilation of documents for production; (17) reviewing objections issued by Plaintiffs; (18) preparing for oral argument on the demurrer to the TAC; and (19) attending oral argument on the demurrer to the TAC.

Tencer did not explain why his preparation and attendance at the hearing on the demurrer to the TAC was listed twice. Nor did he explain why his paralegal billed an additional 30.5 hours during the same nine months on the case. He simply noted the paralegal's time was spent reviewing and compiling documents, drafting a documents list, comparing documents to the due diligence tables, revising documents, and "preparing, bates numbering, and finalizing submission to the court and serving on

6

counsel." [1]  It is unclear if these documents related to the reply for the demurrer or something else.  If the reply and related matters took 80.9 hours, it is interesting to note Tencer plus associates/paralegals billed over 50 hours drafting the demurrer (and other legal tasks such as correspondence described in paragraph 7).

Plaintiffs' supplemental brief asserted Defendants' new request for over $190,000 was not credible.  They asserted Defendants failed to comply with the trial court's order, and only "offered a vague and conclusory supplemental declaration." Plaintiffs submitted evidence proving large portions of Defendants' demurrer to the TAC was identical to an earlier demurrer filed by co-defendants, highlighting multiple pages that appear to have been cut and pasted.  They also provided proof Defendants' demurrer to the fourth amended complaint failed to account for the absence of certain causes of action and was essentially a copy of the demurrer to the TAC.

Plaintiffs reminded the trial court that it agreed with their argument Defendants must apportion their time between contract and non-contract claims.  They noted Defendants "failed to provide information to enable Plaintiffs and the [c]ourt to determine allocation between contract and tort claims."  They concluded Defendants "utterly failed to satisfy their burden despite receiving a second opportunity to do so."

On June 3, 2021, the trial court issued a tentative ruling that became its final order.  The court stated that because there was no objection to the requested costs, it would award the full amount of $26,179.70.  However, the court reduced the amount of

---

[1]  Tencer's description of the work performed by associates and paralegals was set forth in general terms and sometimes duplicated the description of his work.  The breakdown of those costs was as follows:  (1) 66.3 hours by senior associates (rate $325/hour) cost $21,457.50; (2) 40.2 hours by junior associates ($275/hour) cost $11,055; (3) .3 hours by a junior associate ($250/hour) cost $75; (4) 49.6 hours by senior paralegals ($125/hour) cost $6,200; and (5) 23 hours by junior paralegals ($95/hour) cost $2,185.  These services totaled $40,972.50.

*billed* attorney fees from $184,435 to $135,704.42 (a difference of $48,730.58). The court explained it reduced the attorney fee bill "because there was insufficient information regarding the amount of time spent on certain tasks and because the overall amount of time incurred appeared to be excessive and unreasonable based on the minimal information provided regarding the tasks performed."

The trial court determined Defendants' argument they did not need to provide details about billing was unpersuasive and Defendants were relying on factually distinguishable case authority. (Citing *Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285 (*Steiny*).) It noted *Steiny* held invoices were not required because "the attorney declaration 'included detailed evidence of hours spent, tasks concluded, and billing rates.'" It concluded the attorney declaration in this case was not sufficient. "In a case described by counsel as 'practically identical' to prior lawsuits . . . the [c]ourt here does not find that the boilerplate descriptions provided by counsel, many of which showed a duplication of tasks, and work on unfiled summary judgment/summary adjudication motions, constitute 'detailed evidence of hours spent [or] tasks concluded.'"

Next, the trial court allocated 50 percent of the billed fees to the contract claims and reasoned this was fair apportionment because the contract claims "comprised [three] of the [eight] causes of action against [Defendants]." The court noted Defendants were "expressly directed to address the question of an appropriate allocation between contract and tort claims [as stated in a prior minute order, and they] elected not to do so." In summary, the trial court first reduced the requested sum of *billed* fees to $135,704.42, and then cut this figure in half for a new subtotal of $67,852.21. The court added this figure together with the full amount requested for *unbilled* fees ($6,572.50) for a total of $74,424.71.

8

DISCUSSION

The parties do not dispute Defendants were the prevailing party and they were entitled to attorney fees pursuant to Civil Code section 1717. This appeal concerns only two narrow issues regarding whether the court abused its discretion by (1) apportioning the fees in half to only cover litigation of the contract claims and not the tort claims, and (2) reducing the attorney fee award based on the conclusion the full amount was not supported by the evidence and appeared to be excessive. We address each claim separately.

A. *Contract Versus Tort Causes of Action*

In their briefing, Defendants assert there are two contract provisions that provide the basis for awarding attorney fees. They maintain the language in both provisions was broad enough to authorize a fee award in tort as well as contract actions. Defendants also maintain that because the case had not proceeded past the pleading stage before it was dismissed, it was not possible to apportion fees between the contract and tort claims. Due to the above two factors, Defendants conclude the court's decision "to reduce the billed fees by half to only account for the contract causes of action is error and constitutes an abuse of discretion." However, these contentions were not raised below or considered by the trial court. Defendants forfeited the issue. Moreover, we conclude the court correctly interpreted Defendants' decision to ignore its request for briefing as a concession. Thus, there are two reasons why we need not consider Defendants' new apportionment arguments.

In their opening brief, Defendants appear to have forgotten that they did not raise any arguments *against* apportionment below. They make no effort to persuade us to depart from the well-established rule that "appellate courts will ordinarily not consider errors that 'could have been, but [were] not raised below.' [Citations.]" (*Findleton v.*

9

*Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569.) "The rule applies to defenses as well as theories of liability, and to a 'new theory for or against recovery' of attorney fees. [Citation.] 'The policy behind the rule is fairness.' [Citation.] 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' [Citation.]" (*Id.* at pp. 569-570.)

In their reply briefing, Defendants belatedly address the forfeiture issue for the first time, perhaps because Plaintiffs raised it in their briefing. Defendants assert their claim for fees on both contract and tort claims was "property preserved" because (1) the attorney fee provision *obviously* covered both tort and contract claims, and (2) "it was clear that the entirety of the fees incurred for the defense of the action (for all claims—tort and contract) was being sought pursuant to those fee provisions." Alternatively, Defendants argue we should consider the issue because Plaintiffs will not be prejudiced. They explain Plaintiffs raised the same apportionment arguments on appeal as they did in their opposition below, and therefore, the issues are "well preserved" and there is no inequity or prejudice created on appeal. These arguments fail for several reasons.

First, we have no reason to disregard the general rule is "that '"points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before . . . ."'" [Citations.]" (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc*. (2000) 78 Cal.App.4th 847, 895, fn. 10.) Our Supreme Court has explained, "Obvious reasons of fairness militate against consideration of an

10

issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)  Defendants did not provide any reasons for not discussing the issue of forfeiture before.  This is not a case where Defendants would not have known waiver was a potential issue.  When ruling, the trial court expressly pointed out Defendants "elected not" to address the court's direct question about "an appropriate allocation between contract and tort claims."

Second, their arguments against allocation were not properly preserved by Defendants simply requesting an award of all billed attorney fees, covering both tort and contract claims.  The record plainly shows Plaintiffs objected to Defendants' all-inclusive request, asserting there was a clear need for apportionment.  Plaintiffs maintained the contract provisions did not cover tort claims and cited to applicable case authority.  Plaintiffs concluded the moving party's request needed to "apportion fees as required."

When Defendants failed to respond to these arguments in their reply brief, the trial court reasonably interpreted their silence as a concession on the need to apportion attorney fees.  Thereafter, the court specifically asked Defendants to include in their supplemental briefing "sufficient information to enable the [c]ourt to determine the possible allocation of fees and costs between contract and tort claims."  The court's question was not whether to apportion attorney fees, but rather how much to apportion.  If Defendants had responded by raising any arguments *against* apportionment or by answering the court's question about what would be a fair apportionment, and the court had heard and *rejected* those arguments, the issues would have been properly preserved for appeal.  Here, the court reduced the billed attorney fees after hearing no objection from Defendants.

Third, if we assume for the sake of argument Plaintiffs were not prejudiced by Defendants' failure to object to apportionment below, they were certainly prejudiced

11

by Defendants' new argument in their reply brief that equity requires consideration of their waived arguments. Plaintiffs did not have the opportunity to respond to Defendants' theory this court should ignore the well-settled rule a party is precluded from arguing on appeal a point not raised in the trial court. In any event, prejudice is not the only reason we uphold the forfeiture rule. "'Any other rule would ""permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not."' [Citations.]" [Citation.]' [Citation.]" (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.)

In conclusion, Defendants do not refute the fact they failed to raise any objection to Plaintiffs' apportionment arguments below. Defendants have forfeited their right to claim the court abused its discretion when apportioning fees. The record also supports the court's reasonable inference Defendants conceded the issue by electing not to respond to a direct request for briefing about apportionment. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [doctrine of invited error "prevent[s] a party from misleading the trial court and then profiting therefrom in the appellate court"].)

B. *Reduction of Fees*

Defendants assert the court abused its discretion by reducing the amount of billed attorney fees because (1) there was ample evidence to support the full amount billed, (2) further specificity risked waiver of attorney client communication, (3) Defendants' involvement in multiple identical cases would not justify a reduction in attorney fees actually billed, (4) the fees were reasonable because the claims were complex and involved multiple demurrers, and (5) it was immaterial some motions were not filed, or the case was dismissed before some motions were heard because those fees

12

and costs were billed.  We are not persuaded the trial court abused its discretion in reducing the attorney fee amount.

California law requires that the trial court determine reasonable attorney fees to be awarded to the prevailing party in an action on a contract that provides for attorney fees.  (Civ. Code, § 1717, subd. (a).)  "[T]he trial court has broad authority to determine the amount of a reasonable fee."  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).)  "'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong["]'—meaning that it abused its discretion.  [Citations.]"  (*Ibid.*)

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate."  (*PLCM Group, supra,* 22 Cal.4th at p. 1095.)  "The lodestar figure may then be adjusted, based on *consideration of factors specific to the case*, in order to fix the fee at the fair market value for the legal services provided."  (*Ibid.,* italics added.)  "The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] . . . The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.  [Citations.]"  (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623-624; see also *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 ["[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation"].)

Here, Defendants' moving papers contained only vague information about the time required to litigate the case.  Defendants offered to provide copies of invoices for

13

in camera review, if the court determined it required additional information. As it turns out, the court stated it needed more information. It explicitly ruled there was insufficient evidence from which to determine if the requested attorney fees were "reasonable or necessary." It concluded, "Plaintiffs are correct that Defendants have failed to present sufficient information. Defendants do not identify any tasks performed or even the number of hours for these tasks." Rather than accepting Defendants' offer to produce actual client invoices, the court gave them the opportunity to remedy the matter by submitting additional evidence in supplemental briefing.

Defendants began their supplemental brief with the following observation: "Plaintiffs' lawsuit was the eighth such putative class action arising out of the sale of Tenant in Common ('TIC') interests in various properties by the . . . Defendants almost 15 years ago. The case was not merely similar to the prior lawsuits, it was practically identical." They noted Plaintiffs "brought identical legal claims," "asserted many of the same factual allegations," and were "represented by the same law firm." Defendants reminded the trial court the matter was complicated and there was case law holding it was not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method. They concluded Tencer's supplemental declaration sufficiently evidenced the reasonable hourly rate for services, the number of hours he spent on the case, and the tasks performed. (Citing *Steiny, supra*, 79 Cal.App.4th 285.)

The trial court disagreed, concluding Tencer's supplemental declaration lacked the required specificity about the "amount of time spent on certain tasks" and because "the overall amount of time incurred appeared to be excessive and unreasonable based on the minimal information provided regarding the tasks performed." The court correctly determined it could not properly evaluate whether the requested attorney fee

14

was reasonable, or if there was padding, without evidence regarding the time spent on certain tasks. The record fully supports this conclusion.

Tencer's declaration grouped together multiple and often unrelated litigation services, taking place over large blocks of time. Some of the descriptions were duplicative, and others are so lacking that one had to guess as to the nature of the task and if it was completed. For example, paragraph 3 of his declaration provided: "From July 6, 2017[,] through November 30, 2017, I spent a total of 11.10 hours in connection with work on this matter. Those hours included . . . telephone conferences regarding litigation status, reviewing and analyzing correspondence, preparing for Case Management Conference, reviewing and analyzing the First Amended Complaint and exhibits, meeting and conferring regarding deficiencies in pleadings, and researching and drafting demurrer [*sic*] I charged an hourly rate of $500/hour, even though my regular hourly rate at the time was $550/hour."

This explanation did nothing to address the court's concern there was insufficient evidence of the time spent on certain tasks. The paragraph simply proved 11 hours were spent on multiple seemingly unrelated tasks. And by including unqualifiable tasks into the mix, such as reviewing correspondence, how was the court to evaluate if the time spent drafting a demurrer to the first amended complaint was reasonable? This unfiled demurrer could have taken 10 hours or as little as two hours.

Because Tencer's supplemental declaration did not address the court's request for information about the time taken for specific tasks, it cannot be said the court abused its discretion in reducing the amount of billed attorney fees in the award. Contrary to Defendants' contention, there was not ample evidence to support the full amount billed.

15

We also reject Defendants' contention that further specificity risked waiver of attorney-client communications. Defendants make this claim without providing supporting case authority or legal analysis. Their reference to the *Steiny* case is misplaced. That case does not involve a situation where a party refused to produce an invoice due to attorney-client privilege concerns. Moreover, Defendants have apparently forgotten the court declined the offer for an in-camera review of client invoices. It simply expected to see an attorney declaration that "included detailed evidence of hours spent, tasks concluded, and billing rates." (*Steiny, supra*, 79 Cal.App.4th at p. 293.)

Defendants boldly assert the trial court erred by reducing attorney fees simply because Defendants were involved in multiple identical cases, or because some bills referred to unfiled motions. These were not the reasons the court gave for reducing the amount of attorney fees billed. The court mentioned these facts as simply creating a greater need for "detailed evidence of hours spent on tasks concluded." The court was willing to award the full amount of billed fees if Defendants could show those hours reasonably represented the hours spent on *tasks in this* case, as opposed to the other identical cases.

In fixing the amount of reasonably necessary fees, the court should consider whether "'"counsel's skill and effort were wisely devoted to the expeditious disposition of the case"'" or whether instead the matter was "overlitigat[ed]." (*In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 356; *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 [reasonable compensation should not include "inefficient or duplicative efforts"].) The trial court reasonably concluded Tencer's boilerplate descriptions of multiple tasks performed over long periods of time created an opportunity for padding.

Defendants' next contention relates to the complexity of the issues in this case and time needed to review the lengthy documents created for the investment scheme.

16

There is no indication the trial court did not appreciate this case was difficult and complicated. It reduced the billed attorney fees approximately 24 percent from $184,435 to $135,704. (The reduction by $49,000 was roughly the equivalent of 98 hours billed at $500/hour.) It awarded the full amount requested for the *unbilled* amount of $6,572.50, representing the work performed on the successful motion to dismiss as well as the attorney fee request. As stated earlier, the court explained its decision to reduce the attorney fees was *due to Defendants' failure to present sufficient evidence* supporting their claims for attorney fees, not because the court concluded the case was simple to litigate.[2]

Based on all the above, we conclude there was ample evidence supporting the trial court decision to reduce the amount of billed attorney fees. As stated, "the trial court is the best judge of the value of professional services rendered in its court" and Defendants have not convinced us that the court was clearly wrong in awarding $134,704 instead of $180,000. (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.) "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Ibid.*) Such was not the case here.

---

[2] This conclusion also answers Defendants' assertion the court erred by reducing attorney fees simply because the bills included unfiled motions or motions filed but not heard before the case was dismissed. Moreover, the latter contention is belied by the record. The court did not reduce any unbilled attorney fees relating to work performed after January 2021.

DISPOSITION

The postjudgment order is affirmed.  Respondents shall recover their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.

18